2004 ME 129

**CASTINE ENERGY CONSTRUCTION, INC.**

v.

**T.T. DUNPHY, INC.**

Supreme Judicial Court of Maine.

Argued: Sept. 21, 2004.
Decided: Oct. 26, 2004.

Jason M. Jabar, Esq. (orally), George M. Jabar II, Esq., Jabar, Batten, Ringer & Murphy, Waterville, for plaintiff.

William J. Kelleher, Esq. (orally), Taylor D. Fawns, Esq., William J. Kelleher, P.A., Augusta, for T.T. Dunphy, Inc.

David P. Crocker, Esq., Portland, for Worldwide Transport Services.

Panel: CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.*

RUDMAN, J.

[¶ 1] Castine Energy Construction, Inc. appeals from a judgment entered in the Superior Court (Somerset County, *Studstrup, J.*), upon a jury verdict finding that T.T. Dunphy, Inc. was free from negligence, and that Castine proximately caused the damages that were the subject of its complaint. Castine contends that the court erred by failing to grant its motion for judgment as a matter of law, allowing Dunphy's expert to testify as to how the relevant safety regulations should be interpreted, and by denying its request to instruct the jury that it had no duty to warn Dunphy of the possible dangers in improperly securing the freight it was hired to transport. We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] Castine is a construction company that specializes in air pollution control systems. At some time prior to July 10, 2000, Castine was hired by a Virginia company (Covanta Fairfax, Inc.) to fabricate and deliver several devices known as "steel baghouse covers." These covers are steel industrial filters, approximately 11 feet × 11 feet, each weighing 2000 pounds. Cas-

---

* Saufley, C.J. sat at oral argument but did not participate in the development of this opinion.

tine was to fabricate these covers at its facility in Fairfield, Maine, and then deliver them to Virginia. Castine, in turn, contracted with World Transport Services, Inc., who in turn subcontracted with Dunphy to deliver the covers from Castine's facility in Maine to Virginia. Castine decided that the best way to transport the covers would be in an "A-frame" configuration. In order to facilitate the loading of the covers onto the trailer, Castine welded iron cross bars onto the covers. These cross bars were "stitch welded" onto the A-frame structures. Castine testified that these cross bars were intended only for the purposes of loading the trailer and were never meant to be used in securing the covers once loaded. On July 7 and 8, 2000, Castine placed the sixteen covers onto the trailer for transport to Virginia. The covers were placed on the flatbed trailer in the A-frame configuration designed by Castine.

[¶ 3] On Saturday, July 8, 2000, Dunphy's driver arrived at Castine's facility to pick up the trailer. At that time the covers were in good condition. The driver proceeded to secure the covers onto the trailer in preparation for transporting them to Virginia. In order to secure the load the driver used chains, which he attached to the iron cross bars that Castine had left welded to the A-frames. The driver issued a bill of lading to Castine, and then set off for Virginia. While traveling on highway I–290 through Massachusetts, the covers came loose after the driver drove over a bump in the road. All of the covers spilled onto the highway and were irreparably damaged.

[¶ 4] Castine filed a two-count complaint against Dunphy, sounding in strict liability, under a federal transportation liability statute, and in negligence. Prior to trial, Castine moved for a summary judgment, arguing that Dunphy was negligent per se

for violating certain federal safety regulations while transporting the covers. The court (*Marden, J.*) denied Castine's motion concluding that a genuine issue of material fact existed as to whether Dunphy was negligent. A jury trial was held before the Superior Court.

[¶ 5] At the close of evidence, Castine renewed its insistence that the case involved no genuine issue of material fact, and moved for judgment as a matter of law. Castine asserted that it was undisputed that Dunphy had violated a safety statute and was therefore negligent per se. The court denied this motion and held that even if Dunphy did violate a safety statute, such a violation is merely "one of many factors [the jury] can consider in determining whether there was negligence."

[¶ 6] The jury was asked to answer two factual questions: whether Dunphy was free from negligence and whether Castine proximately caused the damages. The jury returned a verdict specifically finding that Dunphy was free from negligence and also that Castine proximately caused the damages to the covers. The court entered a judgment in favor of Dunphy. Castine made a motion for a new trial, arguing that the trial court had erred in allowing Dunphy's expert witness to testify to the effect of certain transportation regulations, and for denying its request that the court instruct the jury that it had no duty to warn Dunphy of the danger in securing the cargo using the cross bars. The court denied this motion. This appeal followed.

## II. DISCUSSION

### A. Judgment as a Matter of Law

■ [¶ 7] Federal law governing the liability of shippers and carriers controls this case. Pursuant to 49 U.S.C.A. § 14706 (1997 & Supp.2004), known as the Carmack Amendment, once a carrier accepts

property it receives for transportation, it issues a bill of lading and is thereafter responsible for damages to the property.[1] 49 U.S.C.A. § 14706(a)(1997). The Supreme Court has explained the effect of the statute:

> It is settled that this statute has two undisputed effects crucial to the issue in this case: First, the statute codifies the common-law rule that a carrier, though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods."

*Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964). Under the statute a shipper must first establish a prima facie case. "To make a prima facie case under the Carmack Amendment, a plaintiff must show 1) delivery to the carrier in good condition; 2) arrival in damaged condition; and 3) the amount of damages caused by the loss." *Camar Corp. v. Preston Trucking Co., Inc.*, 221 F.3d 271, 274 (1st Cir. 2000) (citing *Mo. Pac. R.R. Co.*, 377 U.S. at 137–38, 84 S.Ct. 1142); *see also D.P. Apparel Corp. v. Roadway Express, Inc.*, 736 F.2d 1, 2 (1st Cir.1984).

■ [¶ 8] Once the shipper establishes a prima facie case the burden shifts to the carrier to show, first, that it was free from negligence, and second, that the damages were caused by one of the stated exceptions.[2] *Mo. Pac. R.R. Co.*, 377 U.S. at 138, 84 S.Ct. 1142. In this case the parties agree that Castine established a prima facie case. The key issue, therefore, became whether Dunphy was free from negligence. If Dunphy was not free from negligence, then Castine was entitled to recover its damages as a matter of law pursuant to the Carmack Amendment.

■ [¶ 9] We review "the trial court's denial of a motion for a judgment as a matter of law by examining the evidence in the light most favorable to the nonmoving party to determine whether any reasonable view of the evidence, including all justifiable inferences to be drawn therefrom, could sustain the verdict." *St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.*, 2002 ME 127, ¶ 25, 818 A.2d 995, 1003. "The burden is on the moving party to show that the adverse verdict is clearly and manifestly wrong." *Schiavi v. Goodwin*, 542 A.2d 367, 368 (Me.1988); quoting *Bowie v. Landry*, 150 Me. 239, 108 A.2d 314, 315 (1954).

■ [¶ 10] Contrary to Castine's position, violation of a safety statute or regulation is merely evidence of negligence, not negligence per se. *Town of Stonington v. Galilean Gospel Temple*, 1999 ME 2, ¶ 10, 722 A.2d 1269, 1272; *French v. Willman*,

---

1. Under the Carmack amendment:

   A common carrier ... subject to the jurisdiction of the Interstate Commerce Commission ... shall issue a receipt or a bill of lading for property it receives for transportation.... That carrier ... [is] liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for actual loss or injury to the property caused by (1) the receiving carrier, (2) the delivering carrier, or (3) another carrier over whose lines or route the property is transported into the United States....

49 U.S.C.A. §§ 10730, 11707 (repealed 1995), now contained at 49 U.S.C.A. § 14706(a)(1)(2004).

2. As stated above, the exceptions include: "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." *Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964).

599 A.2d 1151, 1152 (Me.1991). Though this case involves a federal law, state law governs most issues related to the admissibility and effect of evidence. *See* M.R. Evid. 101 ("These rules govern proceedings in the courts of this state."); *see also Elliott v. S.D. Warren Co.*, 134 F.3d 1, 5 (1st Cir.1998) (holding, in the context of a diversity case, that "the evidentiary effect accorded the violation of a safety rule is a matter of state law").

■ [¶ 11] Moreover, even if federal case law does govern the evidentiary effect of a violation of a safety statute, it is unlikely that the negligence per se doctrine would apply. In *Pratico v. Portland Terminal Co.*, 783 F.2d 255 (1st Cir.1985), the case relied upon by Castine, the First Circuit applied the negligence per se doctrine to a set of facts arising under the Federal Employers' Liability Act (FELA), 45 U.S.C.A. §§ 51–60 (1982). The First Circuit has subsequently retreated from this position:

> At the time this court decided *Pratico*, we had very little guidance from our sister circuits. In the past twelve years, however, at least four other courts of appeals have considered when, if ever, a violation of an OSHA regulation might constitute negligence per se. Three of these four courts have held squarely that, because the OSH Act does not create a private right of action, a violation of an OSHA regulation never can be equated with negligence per se. The Sixth Circuit, like the Fifth, leaves open the possibility that a violation of an OSHA regulation may, in some cases

governed by federal law, constitute negligence per se, but it is rare in either circuit for a court actually to uphold a finding of negligence per se on this basis. Silhouetted against this backdrop, the *Pratico* holding is of questionable validity ... [f]or present purposes, it suffices to note that *Pratico* involved an FELA claim and the case's holding is properly limited to causes of action brought under that statute.

*Elliott*, 134 F.3d at 4 (internal citations omitted).[3] Therefore the continuing vitality of the negligence per se doctrine articulated in *Pratico* is questionable even under FELA. As clarified by the First Circuit, the holding in *Pratico* cannot be extended beyond its immediate statutory context. Because the alleged violations of the regulations were merely evidence of negligence, Castine must demonstrate that the contrary verdict was manifestly wrong. Viewing the evidence in the light most favorable to Dunphy, it cannot be said that there was not a genuine issue of material fact with respect to whether Dunphy was negligent. Therefore, the trial court did not err by denying Castine's motion for judgment as a matter of law.

### B. Expert Testimony

■ [¶ 12] In order to show that it was free from negligence, Dunphy called a retired Maine State Trooper to testify with respect to safety issues. Castine asserts that the court erred by allowing Dunphy's expert to testify as to whether Dunphy's federal regulations were complied with.[4]

**3.** Castine notes that the First Circuit's holding makes a distinction between cases brought under the federal law and those brought under Maine law. While the First Circuit does make a distinction, it ultimately holds that the negligence per se doctrine of *Pratico* is strictly limited to cases brought under FELA, and it strongly implies that the doctrine will not be

expanded. *Elliott v. S.D. Warren Co.*, 134 F.3d 1, 4 (1st Cir.1998).

**4.** Castine argues that the trooper testified at trial to matters that he had not previously indicated he would address, and therefore, it was unfairly surprised at trial. Generally, a continuance is the appropriate remedy when

Castine further contends that Dunphy's witness was not qualified as an expert.

[¶ 13] Experts may generally testify if they possess "specialized knowledge" that will assist the trier of fact in determining a fact in issue. M.R. Evid. 702. Moreover, an expert opinion "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." M.R. Evid. 704. Therefore, an expert witness may state his opinion on an ultimate factual issue in a case so long as his testimony satisfies all the requirements for the admission of expert testimony. "Thus, under Rule 704, whether to allow into evidence an opinion on an ultimate issue rests within the sound discretion of the presiding Justice." *Minott v. F.W. Cunningham & Sons*, 413 A.2d 1325, 1330 (Me.1980).

[¶ 14] The trial court did not err in finding that the trooper qualifies as an expert witness. "We defer to the trial court on the determination of whether the expert's qualifications are sufficient to allow the expert to testify." *State v. Cookson*, 2003 ME 136, ¶ 22, 837 A.2d 101, 108. The expert is a retired Maine State Police lieutenant who spent thirty years on the force, twenty-five of them in the commercial vehicle enforcement unit that enforces transportation safety regulations. Because he had extensive experience with enforcing safety regulations, the trooper's knowledge was useful with respect to safety standards and issues.

[¶ 15] The trooper's testimony touched upon an issue that, while not strictly the "ultimate issue,"[5] was clearly of vital importance to the parties. This alone, however, is an insufficient ground for an objection. The trooper did not merely give an opinion as to a "principle of law" as suggested by Castine. The trooper gave his opinion, based on the trial exhibits and testimony, as to what steps would have been required to properly secure the covers before transporting them. This testimony addressed mixed questions of fact and law. While courts may not permit an expert to give an "opinion that amounts to no more than choosing up sides," it is permissible for an expert to testify regarding factual issues that also concern legal standards. Field & Murray, *Maine Evidence* § 704.1 at 377–78 (2000 ed.); *see also Pierce v. Cent. Me. Power Co.*, 622 A.2d 80, 83 (Me.1993) (allowing an expert to testify as to the foreseeability of an accident even though foreseeability was a legal concept used in the jury instructions). In this case, due to the discretion possessed by the court in allowing expert testimony, and because the testimony itself was not dispositive of the ultimate issue of negligence, the court did not err in allowing the trooper's testimony.

## C. Jury Instructions

[¶ 16] Castine notes that responsibility for securing the cargo resided with the carrier pursuant to the Carmack Amendment[6] and argues that the court

a party seeks to admit "surprise" evidence at trial. Because Castine did not seek a continuance, however, it may not now claim unfair surprise. *See Pettitt v. Lizotte*, 454 A.2d 329, 332–33 (Me.1982) (holding that there was no abuse of discretion in allowing a defendant's surprise fact witness to testify because the plaintiff did not request a continuance).

5. Because violation of a safety regulation is evidence of negligence, and not negligence

per se, the question of whether Dunphy violated a regulation, while significant, cannot be characterized as the ultimate issue at trial.

6. Castine cites to regulations effective at the time of the accident, which state that the carrier must assure itself that hardware used in the tiedown assembly is as strong as the tiedown itself. 49 C.F.R. §§ 392.9(b)(1), 393.102(c) (effective until 2002).

abused its discretion by failing to instruct the jury that it had no duty to warn Dunphy that the cross bars it welded to the A-frame structure were not intended for use in securing the freight during transport. Over Castine's objection, the court failed to give the requested instruction. We review jury instructions "in their entirety to determine whether they fairly and correctly apprised the jury in all necessary respects of the governing law." *Lee v. Scotia Prince Cruises Ltd.*, 2003 ME 78, ¶ 15, 828 A.2d 210, 214. We have explained:

> On appellate review, a party can demonstrate entitlement to a requested instruction only where the instruction was requested and not given by the court and it: (1) states the law correctly; (2) is generated by the evidence in the case; (3) is not misleading or confusing; and (4) is not otherwise sufficiently covered in the court's instructions. In addition, the refusal to give the requested instruction must have been prejudicial to the requesting party.

*Clewley v. Whitney*, 2002 ME 61, ¶ 8, 794 A.2d 87, 90 (citation omitted).

 [¶ 17] Contrary to Castine's assertion, the court did not exceed the bounds of its discretion by failing to give the requested instruction. Even though a carrier generally assumes liability for cargo upon the issuance of a bill of lading, it is not responsible for latent defects in the configuration of the cargo when the shipper caused these defects, and it was otherwise free from negligence:

> The primary duty as to the safe loading of property is therefore upon the carrier. When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper.

*United States v. Savage Truck Line, Inc.*, 209 F.2d 442, 445 (4th Cir.1953), *see also Franklin Stainless Corp. v. Marlo Transp. Corp.*, 748 F.2d 865 (4th Cir.1984). Had the court instructed the jury that Castine had *no* duty to warn Dunphy about the danger of using the cross bars to secure the cargo, it may have implied that Dunphy had a duty to discover latent defects, hence confusing the jury. Further, if the defect was indeed latent, an issue of fact, then Castine may have had an obligation to warn Dunphy. Because the requested instruction is misleading, and does not accurately convey the legal standard, the court did not exceed the bounds of its discretion in refusing to give it.

The entry is:

Judgment affirmed.