MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:       2014 ME 141
Docket:         Yor-13-544
Argued:         October 9, 2014
Decided:        December 16, 2014

Panel:          SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, JABAR, and HJELM,
                JJ.

MONICA L. SEMIAN

v.

LEDGEMERE TRANSPORTATION, INC.

HJELM, J.

[¶1]  Ledgemere Transportation, Inc. appeals from a judgment entered in the Superior Court (York County, *Fritzsche, J.*) in favor of Monica L. Semian.  The judgment was based on a jury verdict finding Ledgemere liable for injuries that Semian sustained when she rode a bicycle and collided with a bus that it owned and operated.  Ledgemere first contends that pursuant to 29-A M.R.S. § 2070 (2010),[1] it cannot be held liable to a cyclist who passes a motorist on the right and that the court erred in failing to grant its motions for judgment as a matter of law pursuant to M.R. Civ. P. 50(a), (b).  Ledgemere also argues that the court erred in

---

[1]  Title 29-A M.R.S. § 2070 has since been amended.  P.L. 2013, ch. 241, § 5 (effective Oct. 9, 2013) (codified at 29-A M.R.S. § 2070 (2013)).

2

declining to instruct the jury on the provisions of 29-A M.R.S. § 2063(2) (2010),[2] which prescribes the circumstances when a cyclist must ride on the right side of a way. We affirm the judgment.

## I. BACKGROUND

[¶2] We view the evidence in the light most favorable to Semian. *See Castine Energy Const., Inc. v. T.T. Dunphy, Inc.*, 2004 ME 129, ¶ 9, 861 A.2d 671. Monica L. Semian, a twenty-year-old student from Romania, arrived in Ogunquit, Maine, in June 2010 to work for the summer. On September 9, 2010, Semian was riding a bicycle on Route 1 in Ogunquit when she was passed by a school bus owned by Ledgemere and operated by its employee, Marcia Finley. Semian caught up with the bus when it was stopped at the intersection of Route 1 and Berwick Road. There, the bus straddled the straight and right-turn lanes, began to move forward, and then paused. Believing the bus would drive straight, Semian continued riding and began to pass the bus on the right, intending to go straight. The bus, however, turned right onto Berwick Road. Unable to stop, Semian hit the side of the bus and then fell under it, suffering extensive injuries when the wheels of the bus ran over her torso.

---

[2] Title 29-A M.R.S. § 2063 has since been amended twice. *See, e.g.,* P.L. 2013 ch. 482 § 2 (effective Aug. 1, 2014) (to be codified at 29-A M.R.S. § 2063 (2014)).

[¶3]  Semian commenced an action for negligence against both Ledgemere and Finley in August 2012.[3]  A five-day jury trial began on September 30, 2013. After Semian rested her case-in-chief and again at the close of all the evidence, Ledgemere moved for judgment as a matter of law, *see* M.R. Civ. P. 50(a), (b), arguing that pursuant to 29-A M.R.S. § 2070, Semian assumed the risk when she passed the bus on the right and that Ledgemere cannot be held liable for the resulting damages.  The court denied Ledgemere's motions.

[¶4]  Additionally, at trial Ledgemere requested that the court instruct the jury on the provisions of 29-A M.R.S. § 2063(2), specifically, that a cyclist traveling "at a speed less than the normal speed of traffic moving in the same direction at that time and place shall drive on the right portion of the way as far as practicable except . . . [w]hen proceeding straight in a place where right turns are permitted . . . ."  The trial court concluded that the statute was inapplicable and denied Ledgemere's requested instruction.

[¶5]  The jury found that Ledgemere was seventy-five percent negligent and that Semian was twenty-five percent negligent.  Because of Semian's comparative negligence, *see* 14 M.R.S. § 156 (2013), the jury reduced her recoverable damages from $1,000,000 to $750,000, and the court entered judgment for Semian in that

---

[3]  Prior to trial, Semian dismissed her claim against Finley, leaving only the claim against Ledgemere to be tried.

4

amount. The court denied Ledgemere's post-trial motion for a new trial and its renewed motion for judgment as a matter of law. M.R. Civ. P. 50(b), 59. Ledgemere filed this timely appeal.

## II. DISCUSSION

### A.    Motion for Judgment as a Matter of Law: 29-A M.R.S. § 2070

[¶6]   Ledgemere contends that the court erred in denying its motions for judgment as a matter of law based on the terms of 29-A M.R.S. § 2070. "We review de novo the denial of a motion for judgment as a matter of law pursuant to M.R. Civ. P. 50." *McDonald v. Scitec, Inc.*, 2013 ME 59, ¶ 9, 79 A.3d 374.

[¶7]   The evidence that bears on Ledgemere's motion is undisputed: Semian passed the bus on the right, collided with the bus, and sustained damages. Ledgemere's argument is based on 29-A M.R.S. § 2070(6), which provides in part: "A person operating a bicycle or roller skis may pass a vehicle on the right at the bicyclist's or roller skier's own risk." Ledgemere argues here, as it did in the trial court, that pursuant to section 2070, it cannot be held liable because when Semian sustained her injuries, she was operating a bicycle and passed the bus on the right, thereby assuming the risk of injury and absolving it of *any* liability. We conclude that section 2070 by itself does not insulate a motorist from liability under these circumstances.

[¶8]  Ledgemere's argument calls for us to construe the meaning of section 2070 and, more particularly, to determine whether it bars a cyclist from recovering damages for injuries sustained while passing a vehicle on the right.  We construe statutes de novo.  *Strout v. Cent. Me. Med. Ctr.*, 2014 ME 77, ¶ 10, 94 A.3d 786. To determine the meaning of a statute, we consider the plain meaning of its language and will "look to extrinsic indicia of legislative intent" only if the statute is ambiguous.  *Id.* (quotation marks omitted).  If a statute is "reasonably susceptible to different interpretations," then it is ambiguous.  *Id.* (quotation marks omitted).

[¶9]  The plain language of section 2070 is ambiguous because it may be read to absolve a motorist of liability when a cyclist passes on the right, and alternatively, it may be read merely to identify the cyclist's own conduct as a factor for the fact-finder to consider if that conduct is placed in issue.  Because of this ambiguity, we look to extrinsic information to determine the Legislature's intent.

[¶10]  In effect, Ledgemere argues that section 2070 creates primary assumption of the risk, which is the "situation in which the defendant is held to owe the plaintiff no duty because the plaintiff has assumed the risk of his voluntary

activities."[4] *Merrill v. Sugarloaf Mountain Corp.*, 2000 ME 16, ¶ 9, 745 A.2d 378. If this doctrine applied here, Ledgemere would not owe a duty of care to Semian, because Semian would assume the risk arising from her voluntary conduct.

[¶11]   Generally, the Legislature's enactment of comparative negligence statutes has supplanted the defense of assumption of the risk. Horton & McGehee, *Maine Civil Remedies*, § 16-4(b) at 332, (4th ed. 2004); *Merrill*, 2000 ME 16, ¶ 9, n. 3, 745 A.2d 378.   However, the Legislature has retained the defense of assumption of the risk in several specific circumstances, including equine activities, agritourism, and skiing. *See* 7 M.R.S. § 4103-A(1) (2013); 7 M.R.S. § 252(1) (2013); 32 M.R.S. § 15217(2) (2013).[5]   For example, Maine's equine activities statute states:

> **1. Liability.**   Except as provided in subsection 2, an equine activity sponsor, an equine professional or any other person engaged in an equine activity *is not liable* for any property damage or damages arising from the personal injury or death of a participant or spectator resulting from the inherent risks of equine activities.   Except as provided in subsection 2, *a person may not make any claim or recover*

---

[4]   Under the doctrine of secondary assumption of the risk, "the defendant's negligence is already established, but the plaintiff has proceeded voluntarily to encounter it." *Merrill v. Sugarloaf Mountain Corp.*, 2000 ME 16, ¶ 9, 745 A.2d 378.   Ledgemere's argument is not predicated on a concession that it was negligent.   Rather, it contends that, as a matter of law, it cannot be held liable because Semian assumed the risk of harm when she passed the bus on the right.   This argument is therefore based on the doctrine of primary assumption of the risk, although our conclusion would be the same even if Ledgemere argued that section 2070 created a defense of secondary assumption of the risk.

[5]   The agritourism statute, 7 M.R.S. § 252(1) (2013), was not enacted until 2011; however, it mirrors the language of the skiing and equine activities statutes, further showing that even after the Legislature enacted section 2070, it still continued to follow the same statutory model when imposing assumption of the risk on activity participants.

> from any person for any property damage or damages for personal injury or death resulting from the inherent risks of equine activities. Each participant and spectator in an equine activity expressly assumes the risk and legal responsibility for any property damage or damages arising from personal injury or death that results from the inherent risk of equine activities.

7 M.R.S. § 4103-A(1) (emphasis added). The agritourism and skiing statutes mirror this language. *See* 7 M.R.S. § 252(1); 32 M.R.S. § 15217(2).

[¶12] These statutes explicitly assign legal responsibility to participants for their damages when those participants knowingly assume the inherent risks of these activities, and correspondingly, the statutes expressly and fully shield the owner or operator from liability to the injured person arising from those risks. However, the protection from liability can be invoked as a defense in these contexts only if the participant had been notified both of the inherent risks of the activity and of the limitations of owner/operator liability. 7 M.R.S. § 252(3); 7 M.R.S. § 4103-A(3); 32 M.R.S. § 15217(3).

[¶13] Section 2070 differs structurally from these statutes in several material ways. First, unlike the recreational statutes noted above, section 2070 does not expressly protect a motorist against liability to the passing cyclist. Instead, section 2070 addresses only the conduct of the cyclist without any direct statement about the effect of her conduct on the motorist's liability.

[¶14]  Further, section 2070 does not distinguish between inherent risk and other risks that, in the statutes governing the activities noted above, would fall outside of the bar to liability.  In an attempt to reconcile this structural difference between section 2070 and the recreational liability statutes, Ledgemere argues that if a motorist acts with a high level of culpability to cause an accident with a cyclist passing on the right, the motorist would not benefit from a defense of assumption of the risk pursuant to section 2070.

[¶15]  Ledgemere's recognition that section 2070 should not impose an absolute defense based on assumption of the risk, however, demonstrates why the statute does not immunize the motorist in the first instance.  Unlike the other statutes noted above, section 2070 does not contain any language that would limit the scope of protection from liability otherwise afforded to the motorist.  To impose some limitation on any immunity based on assumption of the risk, Ledgemere would have us graft additional language onto the statute.  The Legislature has enacted laws that include the very type of language that Ledgemere argues should be read into section 2070.  However, despite the Legislature's demonstrated ability to enact such a provision in other contexts, that limiting language is absent from section 2070, and we decline to construe section 2070 as if the Legislature itself had included that language.  *See DaimlerChrysler Corp. v. Exec. Dir., Me. Revenue Servs.*, 2007 ME 62, ¶ 17, 922 A.2d 465.  This means that

if, as Ledgemere argues, section 2070 places all risk of injury on the cyclist and forecloses redress, the statute would create an even broader scope of liability protection than the statutes that more clearly establish the defense in other situations. This is a persuasive indication that the Legislature did not intend the "risk" language in section 2070 to rise to the level of the legal doctrine of assumption of the risk.

[¶16] Additionally, the statutes creating the defense of assumption of the risk in recreational contexts predicate that protection on express notification to the participant about the existence of the risks inherent in that activity and about the resulting immunity of the facility from liability. That notification assists the participant in making an informed decision about whether to assume the inherent risks of that activity. If the facility owner or operator provides the requisite notice to the consumer, and if the then-informed consumer chooses to proceed with the activity, she does so with an understanding that she will forfeit a remedy for injuries caused by the activity's inherent risks.

[¶17] If Ledgemere's construction were correct, then the scope of a motorist's immunity pursuant to section 2070 would be greater than the scope of the immunity of an owner or operator under the recreation statutes because, for the reasons discussed above, section 2070 would not restrict the defense of assumption of the risk to situations where the motorist engages in ordinary negligent conduct.

10

Further, the motorist would receive that greater scope of protection from liability even without a corresponding obligation to notify the party who then sustains injury about the risks. Therefore, in the end, Ledgemere's construction of section 2070 would give a motorist greater protection than in situations where assumption of the risk is more clear, with none of the corresponding obligations that the Legislature has imposed in those other contexts as a condition for the tortfeasor to receive the benefit of that defense.

[¶18] The Legislature has thereby demonstrated that when it intends to create the defense of assumption of the risk, it uses a common framework that clearly creates an exception to the more generally applicable defense of comparative negligence. Although Ledgemere argues that section 2070 allocates the entire risk of loss to a cyclist, the statutory framework found in other settings is not part of section 2070, demonstrating that the Legislature did not intend the statute to create the defense of assumption of the risk in these circumstances.

[¶19] Further, if section 2070 provided a full defense, as Ledgemere argues, the provisions of 29-A M.R.S. § 2060(1-A) (2010)[6] would be superfluous. Section 2060(1-A) prohibits a motorist who is passing a cyclist from turning right unless the turn can be made with complete safety. That statute applies here, and in fact,

---

[6] Title 29-A M.R.S. § 2060 has since been amended. P.L. 2013, ch. 241, §§ 2-3 (effective Oct. 9, 2013) (codified at 29-A M.R.S. § 2060 (2013)).

without objection from either party, the court instructed the jury about its terms, because the bus passed Semian shortly before Semian proceeded to pass the bus at the intersection of Route 1 and Berwick Road. If, as a matter of law, section 2070 prevents cyclists from recovering for injuries sustained while passing on the right, section 2060(1-A) would be surplusage because the nature of the motorist's own conduct would no longer be at issue. We decline to construe section 2070 in a way that renders section 2060(1-A) meaningless. *See Hickson v. Vescom Corp.*, 2014 ME 27, ¶ 15, 87 A.3d 704 ("All words in a statute are to be given meaning, and no words are to be treated as surplusage if they can be reasonably construed." (quotation marks omitted)). Instead, sections 2060(1-A) and 2070 can be read harmoniously if, as we hold here, the latter by itself does not bar a cyclist from recovering damages incurred while passing a motorist who makes a right-hand turn in the absence of complete safety. Rather, the conduct of the motorist can be considered pursuant to section 2060(1-A), and the conduct of the cyclist can be considered pursuant to section 2070.[7]

[¶20] Section 2070 therefore does not protect a motorist from liability merely because a cyclist passes on the right. Instead, section 2070 is best seen as a recognition of the risk that a cyclist creates to her safety when she passes a

---

[7] In fact, the court instructed the jury of Ledgemere's duty of care pursuant to section 2060(1-A) and of Semian's assumption of the risk pursuant to section 2070.

motorist on the right, and it confirms for a fact-finder the relevance of a cyclist's own responsibility in the event of an accident. Section 2070 did not entitle Ledgemere to judgment as a matter of law, and the court correctly denied its motions.

B.  Jury Instructions: 29-A M.R.S. § 2063

[¶21]  Semian next argues that the court erred by declining to instruct the jury on the provisions of 29-A M.R.S. § 2063(2) and by denying its motion for a new trial based on that ruling.

[¶22]  At the time pertinent to this action, section 2063 provided:

**Riding to the right.**  A person operating a bicycle or roller skis upon a roadway at a speed less than the normal speed of traffic moving in the same direction at that time and place shall drive on the right portion of the way as far as practicable except when it is unsafe to do so or:

**A.**  When overtaking and passing another roller skier, bicycle or other vehicle proceeding in the same direction;

**B.**  When preparing for or making a left turn at an intersection or into a private road or driveway;

**C.**  When proceeding straight in a place where right turns are permitted; and

**D.**  When necessary to avoid hazardous conditions, including, but not limited to, fixed or moving objects, vehicles, bicycles, roller skiers, pedestrians, animals, broken pavement, glass, sand, puddles, ice, surface hazards or opening doors from parallel-parked vehicles, or a lane of substandard width that makes it unsafe to continue along the right portion of the way. For purposes of this paragraph, "lane of

substandard width" means a lane that is too narrow for a bicycle or roller skier and a vehicle to travel safely side by side in the lane.

[¶23]   The court declined to instruct the jury on the law set out in this statute, reasoning that section 2063 "didn't quite fit the facts of this case in the last few seconds which really mattered" but that the statute applied "up until a few seconds before the impact."[8]

[¶24]   We review a trial court's denial of a requested jury instruction for prejudicial error.  "[O]n appellate review, a party can demonstrate entitlement to a requested instruction only where the instruction was requested and not given by the court and it: (1) states the law correctly; (2) is generated by the evidence in the case; (3) is not misleading or confusing; and (4) is not otherwise sufficiently covered in the court's instructions." *Frustaci v. City of S. Portland*, 2005 ME 101, ¶ 15, 879 A.2d 1001 (quotation marks omitted).

[¶25]   Section 2063 requires a cyclist to "drive on the right portion of the way as far as practicable" if the cyclist is traveling "at a speed less than the normal speed of traffic moving in the same direction at that time and place . . . ."  The legislative requirement that a cyclist must ride on the right, when that duty arises in the first instance, is then subject to the exceptions enumerated in subsections 2063(2)(A)-(D).  Ledgemere argues that those exceptions describe circumstances

---

[8]  It appears from the trial transcript that the court and counsel may have engaged in discussions off the record about Ledgemere's requested jury instruction based on section 2063.  However, we must consider the issue based on the limited record of the court's ruling.

14

where a cyclist is *prohibited* from riding and passing other vehicles on the right, and instead must ride on some other part of the way. It is undisputed that the circumstances described in at least one of those exceptions are present: Semian was driving a bicycle straight in a place where right-hand turns are permitted. 29-A M.R.S. § 2063(2)(C). From this, Ledgemere argues that the court should have instructed the jury on the terms of section 2063, which would have allowed the jury to determine that Semian violated that statute because she was riding her bicycle on the right portion of the road and not elsewhere. Any such violation of the statute would then constitute evidence of comparative negligence. *See Castine Energy Constr., Inc. v. T.T. Dunphy, Inc.*, 2004 ME 129, ¶ 10, 861 A.2d 671 (violation of a safety statute is evidence of negligence).

[¶26] Ledgemere's contention implicates the same familiar principles of statutory construction we have noted previously. *See supra* ¶ 8; *Strout*, 2014 ME 77, ¶ 10, 94 A.3d 786. Here, we need look no further than the plain language of section 2063(2), because the statute is unambiguous.

[¶27] Ledgemere's argument is based on a misapprehension of the plain meaning of section 2063. That statute defines the circumstances when a cyclist must ride as far as practicable to the right of the way. Beyond that, when those circumstances are not present, the statute is silent on where the cyclist must ride. For example, contrary to Ledgemere's contention, section 2063 does not require a

cyclist to ride in or closer to a through lane in a location where right turns are permitted. Rather, the only affirmative command arising from the provisions of section 2063 is triggered when (1) the initial conditions of applicability arise (that is, when the cyclist's speed is "less than the normal speed of traffic moving in the same direction at that time and place . . ."); and, (2) when none of the exceptions described in subsections (A) through (D) applies. In the instances where the statute controls, then the cyclist must travel to the right. Otherwise, the plain language of the statute does not direct the cyclist to ride in any particular portion of the way.

[¶28] The record does not reveal the specific basis for the trial court's conclusion that section 2063 was inapposite to the jury's consideration of Semian's comparative negligence. Nonetheless, Ledgemere itself argues that the evidence establishes at least one of the exceptions to the requirements of section 2063, and a review of the evidence confirms that view. This is precisely the reason why section 2063 does not apply at all. Because the evidence necessarily invoked at least one of the exceptions to the requirements of section 2063(2), the statute is inapplicable.

[¶29] Although the provisions of section 2063 do not apply to this case, Ledgemere remained entitled to argue—as it did at trial—that because of the manner in which she was operating a bicycle, Semian was comparatively

negligent, and the jury remained free to consider that affirmative defense. Further, as is discussed *supra*, the court properly instructed the jury that a person operating a bicycle passes other vehicles on the right at her own risk. 29-A M.R.S. § 2070. However, the court did not err when it declined to instruct the jury on the specific law as set out in section 2063, and it did not err when it denied Ledgemere's motion for a new trial based on its contention that the court erroneously omitted the section 2063 instruction.[9]

The entry is:

Judgment affirmed.

**On the briefs:**

Rebecca S. Webber, Esq., and Stephen B. Wade, Esq., Skelton, Taintor & Abbott, Auburn, for appellant Ledgemere Transportation, Inc.

Terrence D. Garmey, Esq., Gary Goldberg, Esq., and David Kreisler, Esq., Terry Garmey & Associates, Portland, for appellee Monica L. Semian

H. Ilse Teeters-Trumpy, Esq., Taylor, McCormack & Frame, LLC, Portland, for amicus curiae Bicycle Coalition of Maine

[9] In their arguments on appeal, Ledgemere and Semian contest whether the evidence generated the initial predicate to section 2063, which focuses on the speed of the bicyclist in relation to "the normal speed of traffic moving in the same direction at that time and place . . . ." We need not and therefore do not reach that issue, because the exception created in section 2063(2)(D) is indisputably present and precludes consideration of the affirmative requirements of section 2063 in any event.

**At oral argument:**

Rebecca S. Webber, Esq., for appellant Ledgemere Transportation, Inc.

David Kreisler, Esq., for appellee Monica L. Semian

York County Superior Court docket number CV-2012-179
FOR CLERK REFERENCE ONLY