MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:    2017 ME 19
Docket:      Fed-16-14
Argued:      September 8, 2016
Decided:     January 26, 2017

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN,* JABAR, and HUMPHREY, JJ.
Majority:     SAUFLEY, C.J., and ALEXANDER, <u>MEAD</u>, GORMAN, JABAR, and HUMPHREY, JJ.
Concurrence: <u>SAUFLEY, C.J.</u>, and ALEXANDER and GORMAN, JJ.

KAYLA DOHERTY

v.

MERCK & CO., INC., et al.

MEAD, J.

[¶1]  After Kayla Doherty gave birth to a healthy son in June 2014, she filed a complaint against Merck & Co., Inc., and the United States in the United States District Court for the District of Maine, alleging that in February 2012, at a community health center for which the United States was responsible, a physician negligently failed, as a result of Merck's defective applicator, to insert into her arm an implant manufactured by Merck that was designed to prevent pregnancy for at least three years.  Pursuant to

---

  * Although not available at oral argument, Justice Gorman participated in the development of this opinion.  *See* M.R. App. P. 12(a) ("A qualified justice may participate in a decision even though not present at oral argument.").

4 M.R.S. § 57 (2016) and M.R. App. P. 25, the federal court (*Hornby, J.*) has certified three questions of state law to us:

> 1. Does the protection of Maine's Wrongful Birth statute, 24 M.R.S.A. § 2931, extend to the defendant Merck & Co., Inc., as a drug manufacturer and distributor?
>
> 2. If not, does the Law Court's decision in *Macomber v. Dillman*, 505 A.2d 810 (Me. 1986), which concerned a failed sterilization by a health care provider, apply to the plaintiff Kayla Doherty's claim against Merck as a drug manufacturer and distributor?
>
> 3. Does Maine's Wrongful Birth statute prohibit all recovery for Doherty against both defendants (Merck if it is covered by the statute, *see* question one, *supra*) because of the nature of the procedure she underwent? Or does the statute allow Doherty to proceed with her claims but limit the recoverable damages to her expenses incurred for the procedure and pregnancy, pain and suffering connected with the pregnancy, and loss of earnings during pregnancy?

[¶2] We answer the first question in the affirmative. Accordingly, we decline to answer the second question. In answer to the third question, pursuant to 24 M.R.S. § 2931 (2016) Doherty may not recover any damages on her claims against either defendant.

## I. BACKGROUND

[¶3] The United States District Court denied without prejudice the defendants' motion to dismiss Doherty's complaint. The court stated in its certification to us that "the following factual allegations are properly pleaded.

The plaintiff's factual allegations are therefore taken as true for the purpose of testing the defendants' argument that Maine law allows no recovery to the plaintiff even if her allegations are proven." *See Miller v. Town of Wenham*, 833 F.3d 46, 51 (1st Cir. 2016) (stating that in reviewing the dismissal of a claim pursuant to Fed. R. Civ. P. 12(b)(6), the federal courts "accept as true all well-pled facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor" (alteration and quotation marks omitted)).

[¶4]  Doherty's complaint alleges that on January 26, 2012, she visited a federally-supported health care center in Albion to inquire about birth control options.  She saw a physician, who recommended the use of an implantable drug manufactured by Merck consisting of a single, four-centimeter-long rod inserted under the skin of the inner side of the patient's upper arm with a syringe-like applicator.  The drug, which is designed to be effective for at least three years unless the rod is removed sooner by a physician, works by inhibiting ovulation.  Merck knew, or should have known, that the applicator had a history of failed insertion attempts occurring when, unbeknownst to the treating physician, the rod would remain stuck in the applicator following the procedure.

[¶5]  On February 28, 2012, the physician who recommended the drug to Doherty carried out the implantation procedure, but failed to check her arm to see if it was successful.  A pregnancy test at the health care center on October 16, 2013, confirmed that Doherty was pregnant.  An examination and subsequent ultrasound examination failed to locate the rod in either of Doherty's arms.  A nurse later told Doherty that the physician "believes it was never inserted."

[¶6]  On June 9, 2014, Doherty gave birth to a healthy boy following a long and painful delivery.  In connection with her pregnancy, Doherty suffered nausea, mental and physical pain and suffering, insomnia, swelling, and weight gain.  She also incurred expenses, and she lost wages as a result of missing work for medical appointments.  Following the birth of her son, Doherty received mental health counseling and suffered emotional distress as a result of being unprepared to raise a child as a single mother.

[¶7]  Doherty filed suit against Merck on theories of strict product liability, breach of warranty, negligence, and negligent misrepresentation; and against the United States for the negligence of the physician, and for the physician's failure to obtain her informed consent.  The complaint also asked the federal court to declare that 24 M.R.S. § 2931 is unconstitutional, both

facially and as applied. Merck and the United States moved to dismiss the complaint on the grounds that (1) pursuant to 24 M.R.S. § 2931(1), the birth of a healthy child is not a "legally recognizable injury" for which Doherty may recover damages; and (2) pursuant to 24 M.R.S. § 2931(2), Doherty did not undergo a "failed sterilization procedure" that would invoke the statute's exception and allow her to recover limited damages. The court denied the motions pending our answers to the three certified questions.

## II. DISCUSSION

### A. Acceptance of the Certified Questions

[¶8] A threshold issue is whether we will agree to consider the certified questions. *See Bankr. Estate of Everest v. Bank of Am., N.A.*, 2015 ME 19, ¶ 13, 111 A.3d 655 ("Title 4 M.R.S. § 57 authorizes, but does not require, us to consider a certified question of state law posed by a federal court in certain circumstances." (quotation marks omitted)). In resolving that issue,

> [w]e may consider the merits of a certified question from the United States District Court and, in our discretion, provide an answer if (1) there is no dispute as to the material facts at issue; (2) there is no clear controlling precedent; and (3) our answer, in at least one alternative, would be determinative of the case.
>
> We have stated that wherever reasonably possible, the state court of last resort should be given [the] opportunity to decide state law issues on which there are no state precedents which are controlling or clearly indicative of the developmental course of the

state law because this approach (1) tends to avoid the uncertainty and inconsistency in the exposition of state law caused when federal courts render decisions of state law which have an interim effectiveness until the issues are finally settled by the state court of last resort; and (2) minimizes the potential for state-federal tensions arising from actual, or fancied, federal court efforts to influence the development of state law.

*Id.* ¶¶ 13-14 (alterations, citation, and quotation marks omitted).

[¶9] Here there is no dispute as to the facts to be accepted as true at this stage of the case; no clear controlling precedent that would answer the questions; and one alternative that would be determinative of the case, in that the federal court stated in its certification that "a decision by the Law Court that no recovery is available to the plaintiff under Maine law even if all her factual allegations are true . . . would be determinative of the cause and would end the lawsuit now." Therefore, we agree to consider the certified questions.

B.     Scope of 24 M.R.S. § 2931

[¶10] Maine's "wrongful birth" statute provides, in part:

**§ 2931. Wrongful birth; wrongful life**

   **1. Intent.** It is the intent of the Legislature that the birth of a normal, healthy child does not constitute a legally recognizable injury and that it is contrary to public policy to award damages for the birth or rearing of a healthy child.

   **2. Birth of healthy child; claim for damages prohibited.** No person may maintain a claim for relief or receive an award for damages based on the claim that the birth and rearing of a healthy

child resulted in damages to him. A person may maintain a claim for relief based on a failed sterilization procedure resulting in the birth of a healthy child and receive an award of damages for the hospital and medical expenses incurred for the sterilization procedures and pregnancy, the pain and suffering connected with the pregnancy and the loss of earnings by the mother during pregnancy.

    . . . .

24 M.R.S. § 2931(1)-(2).

[¶11] The first certified question asks whether section 2931 applies to Merck. We have often said that "[i]n interpreting a statute, we seek to effectuate the intent of the Legislature, which is ordinarily gleaned from the plain language of the statute. We will not look beyond the plain language of the statute if it is unambiguous." *State v. Knight*, 2016 ME 123, ¶ 9, 145 A.3d 1046. (citation and quotation marks omitted).

[¶12] Section 2931 is not at all ambiguous in that it bars a specific legal claim regardless of the party that the claim is brought against: "No person may maintain a claim for relief or receive an award for damages based on the claim that the birth and rearing of a healthy child resulted in damages to him." 24 M.R.S. § 2931(2). Consistent with the Legislature's stated public policy— "the birth of a normal, healthy child does not constitute a legally recognizable injury," 24 M.R.S. § 2931(1)—the statute addresses only the basis for the claim,

not the identity of the defendant. In the case of a legislative public policy decision,

> [w]hen it is clear that the Legislature enacted specific legislation to remedy an existing problem, social or otherwise, such statutory enactment must be construed so as to promote the policy consideration which brought about the Legislature's action. . . . We must look to the end which our Legislators sought in the enactment of the law and approve a construction which will not nullify its purpose.

*Waddell v. Briggs*, 381 A.2d 1132, 1135 (Me. 1978).

[¶13] Here, Doherty claims that she is entitled to damages resulting from injuries that she suffered when the failure of Merck's product resulted in a non-remarkable pregnancy leading to the birth of her healthy child. That is precisely the claim barred by the very clear language of the statute. Doherty's argument that the statute applies to the physician who treated her but not to Merck disregards the statute's declaration that the birth of a healthy child is not a legally recognizable injury *ab initio*; therefore, it is not actionable against any defendant. As a result, unless the "failed sterilization procedure" exception contained in section 2931(2) and discussed *infra* applies, Doherty may not recover damages against either Merck or the United States for the birth and expense of raising her healthy child.[1]

---

[1] In her brief Doherty argues that not all claims, and by implication not all damages, are barred by the statute. She does not specify the damages that would conceivably remain once all damages for

[¶14]  For these reasons, we answer the first certified question in the affirmative.

C.     Scope of *Macomber v. Dillman*

[¶15]  The second certified question asks whether our holding in *Macomber v. Dillman*, 505 A.2d 810 (Me. 1986), a case involving a failed tubal ligation procedure resulting in the birth of a healthy child, *id.* at 812, is applicable to Merck.  Because the federal court conditioned the second question upon a negative answer to the first question, and we have answered that question in the affirmative, we do not answer the second question.[2]

---

"the birth and rearing of a healthy child," 24 M.R.S. § 2931(2) (2016), are excluded.  In any event, that the Legislature in section 2931(2) created a very specific category of damages—"the hospital and medical expenses incurred for the sterilization procedures and pregnancy, the pain and suffering connected with the pregnancy and the loss of earnings by the mother during pregnancy"—that are available in a very specific and limited circumstance, namely when "a failed sterilization procedure result[s] in the birth of a healthy child," means, employing well-recognized principles of statutory construction, that those are the only damages that may be awarded as a result of claims arising from the birth of a healthy child.  *See Musk v. Nelson*, 647 A.2d 1198, 1201 (Me. 1994) ("[A] well-settled rule of statutory interpretation states that express mention of one concept implies the exclusion of others not listed."); *Lee v. Massie*, 447 A.2d 65, 68 (Me. 1982) ("[T]he maxim[] *expressio unius est exclusio alterius* . . . is regarded as well recognized in Maine." (quotation marks omitted)).  We said as much in *Thibeault v. Larson*: "As expressed in [24 M.R.S. § 2931] subsections (1) and (2), the birth of a healthy child is not a legally cognizable injury and an action may *only* be maintained for *limited* damages *if* the healthy child is born as a result of a failed sterilization."  666 A.2d 112, 115 (Me. 1995) (emphases added).

    [2] We note, in any event, that because the Legislature has occupied the field on this issue in enacting section 2931, *Macomber* no longer has any independent jurisprudential vitality.

10

D.     The "Failed Sterilization Procedure" Exception

[¶16]  The third certified question asks if the single exception to the statute's blanket prohibition against claims based on the birth of a healthy child is applicable on these facts.  The relevant section provides:

> No person may maintain a claim for relief or receive an award for damages based on the claim that the birth and rearing of a healthy child resulted in damages to him.  A person may maintain a claim for relief based on a failed sterilization procedure resulting in the birth of a healthy child and receive an award of damages for the hospital and medical expenses incurred for the sterilization procedures and pregnancy, the pain and suffering connected with the pregnancy and the loss of earnings by the mother during pregnancy.

24 M.R.S. § 2931(2).

[¶17]  The term "sterilization procedure" is not defined in the Maine Health Security Act, 24 M.R.S. §§ 2501-2988 (2016), where section 2931 is located.  Doherty argues that the exception should apply here because Merck's implantable, long-term drug is "synonymous with sterilization," and therefore "the only reasonable interpretation of [section 2931] is that the term 'sterilization procedure' . . . applies to *any long-lasting effort* to render a woman infertile."  We disagree, and conclude that the Legislature intended "sterilization procedure" to include medical or surgical procedures that alter the body's anatomy for the purpose of permanently ending the possibility of

procreation. The term does not include temporary pharmaceutical intervention in the reproductive process, such as the implant Doherty sought, nor does it include physical intervention, such as an intrauterine device, that is designed to be reversible without permanently altering the body's reproductive organs. These are methods of contraception, and in section 2931 the Legislature explicitly made an exception to its prohibition against recovering damages for the birth of a healthy child only for "sterilization." 24 M.R.S. § 2931(2).

[¶18] Our construction is supported by the Legislature's near-contemporaneous definition of the term "sterilization procedure[]" in title 34-B. In the Due Process in Sterilization Act of 1982, 34-B M.R.S. §§ 7001-7017 (2016), the effective date of which predated the enactment of section 2931 by two years, the Legislature stated that it "finds and declares that *sterilization procedures are generally irreversible* and represent *potentially permanent* and highly significant consequences for the patient involved." 34-B M.R.S. § 7002 (emphases added) (enacted by P.L. 1983, ch. 459, § 7 (effective Jan. 15, 1984)). The Act goes on to define "[s]terilization" as "*a medical or surgical procedure*, the purpose of which is to render an individual

*permanently incapable of procreation.*"   34-B M.R.S. § 7003(9) (emphases added).

[¶19]   This definition was known to the Legislature when it enacted section 2931 just two years later.  *See Musk v. Nelson*, 647 A.2d 1198, 1202 (Me. 1994) ("The Legislature is presumed to be aware of the state of the law and decisions of this Court when it passes an act.").  During that short time interval, the Legislature was aware that traditional methods of sterilization such as tubal ligation or vasectomy that are intended to be permanent may sometimes be reversed,[3] yet it did not include a more expansive definition of "sterilization procedure" in section 2931.  Presumably, if the Legislature, mindful of its recent enactment in title 34-B, meant to include procedures— such as the implant at issue here—that are intended to be reversible in the section 2931(2) exception, it would have said so, and not used the same term it had recently defined to mean procedures that are "generally irreversible," and "the purpose of which is to render an individual permanently incapable of procreation."  34-B M.R.S. §§ 7002, 7003(9).  In contrast to what the Legislature

---

[3]  Indeed, when a court orders that a sterilization be performed, by statute it "shall be the most reversible procedure available at the time" unless the treating physician adjudges otherwise. 34-B M.R.S. § 7013(6) (2016).  Nevertheless, the Legislature determined in defining "[s]terilization" as it did that the *purpose* of the procedure, even if it is potentially reversible, "is to render an individual permanently incapable of procreation."  34-B M.R.S. § 7003(6) (2016).

explicitly defined to be a "sterilization procedure[]," the procedure that Doherty underwent was not "generally irreversible," nor "potentially permanent," nor intended to "render [her] permanently incapable of procreation." 34-B M.R.S. §§ 7002, 7003(9).

[¶20] Other courts and authorities are in accord with our conclusion that sterilization is commonly understood to mean a procedure that is intended to be permanent. *See Semian v. Ledgemere Transp., Inc.*, 2014 ME 141, ¶¶ 8-9, 106 A.3d 405 (stating that when a statute is "reasonably susceptible to different interpretations" the Law Court may "look to extrinsic information to determine the Legislature's intent" (quotation marks omitted)).

[¶21] In a 1942 case where the United States Supreme Court reviewed an Oklahoma compulsory sterilization statute, Justice Douglas emphasized the gravity of sterilization as a permanent procedure, writing, "We are dealing here with legislation which involves one of the basic civil rights of man. . . . There is no redemption for the individual whom the law touches. Any experiment which the State conducts is to his irreparable injury. He is forever deprived of a basic liberty." *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942).

14

[¶22]   Courts to the present day have continued to recognize the distinction between permanent sterilization and reversible contraception.[4] In 2010, the United States Court of Appeals for the Third Circuit, examining the question of whether the compelled insertion of an intrauterine device (IUD) constitutes sterilization for the purpose of asylum eligibility, concluded that "the term 'involuntary sterilization' by definition contemplates a permanent inhibition of reproductive capacity," and noted that

> [i]ndeed, taken to its extreme, [the applicant's] attempt to read the permanency out of "sterilization" would lead to such bizarre propositions as considering the use of any contraceptive . . . to be

---

   [4] *See, e.g.*, *Huang v. Holder*, 591 F.3d 124, 129-30 (2d Cir. 2010) ("The BIA's [Board of Immigration Appeals] reasoning that sterilization makes one permanently incapable of having children, whereas an IUD is a temporary measure, is reasonable."); *Chen v. Holder*, 313 F. App'x 625, 630 (4th Cir. 2009) (concluding, upon reviewing the BIA's determination that "the sterilization procedure . . . leaves one *incapable* of having children . . . [and] IUD use should not be treated as the equivalent of sterilization," that "we certainly cannot say that [the BIA's] interpretation is unreasonable" (alteration and quotation marks omitted)); *Gerber v. Hickman*, 291 F.3d 617, 622 (9th Cir. 2002) ("Sterilization is intrusive, permanent, and irreparable."); *Peck v. Califano*, 454 F. Supp. 484, 487-88 (D. Utah 1977) ("unlike other contraceptive or family planning measures, sterilization results in a permanent waiver of the fundamental right to procreate" (quotation marks omitted)); *C.D.M. v. State*, 627 P.2d 607, 612 (Alaska 1981) ("Sterilization necessarily results in the permanent termination of the intensely personal right to procreate."); *Kennedy v. Kennedy*, 845 N.W.2d 707, 714-15 (Iowa 2014) (citing *C.D.M.*, 627 P.2d at 612, as well as a source describing sterilization as "the permanent physical deprivation of a fundamental constitutional right" (quotation marks omitted)); *In re Moe*, 432 N.E.2d 712, 716 n.3 (Mass. 1982) ("Sterilization is a surgical procedure that, in nearly all cases, renders a person permanently incapable of reproduction."); *In re Truesdell*, 304 S.E.2d 793, 812 (N.C. Ct. App. 1983) ("State action to compel a sterilization constitutes an irreversible certainty.  It would permanently and irrevocably deprive [the ward] of her procreative capacity."); *In re Terwilliger*, 450 A.2d 1376, 1382 (Pa. Super. Ct. 1982) ("sterilization necessarily results in the permanent termination of the intensely personal right of procreation" (italics omitted)); *In re Guardianship of Eberhardy*, 307 N.W.2d 881, 897 (Wis. 1981) ("[S]tate action to authorize sterilization constitutes an irreversible certainty.  It would permanently and irrevocably deprive [the ward] of her procreative capability."); *see also Conservatorship of Valerie N.*, 707 P.2d 760, 787 n.9, 788 (Cal. 1985) (Bird, C.J., dissenting) ("Other methods of contraception do not irreversibly prevent procreation, nor do they require the surgical destruction of any biological capacity for a nonmedical purpose. . . . [T]he majority fail[s] to weigh the impact of the irreversible deprivation of the right to procreate . . . .").

"sterilization," since all contraceptives inhibit reproduction. At the risk of stating the obvious, the use of a contraceptive ordinarily would not amount to sterilization, since sterilization is permanent and irreparable and the use of a contraceptive—even an IUD, which is designed to remain in place until removed by a physician—is not.

*Cheng v. Att'y Gen.*, 623 F.3d 175, 182-83, 187 & n.6 (3d Cir. 2010) (alterations, ellipsis and quotation marks omitted).

[¶23]    Beyond the widely-held view of numerous courts, *Black's Law Dictionary* defines "sterilization" as "[t]he act of making (a person or other living thing) *permanently* unable to reproduce." Black's Law Dictionary 1640 (10th ed. 2014) (emphasis added); *see also* Stedman's Medical Dictionary 1475 (25th ed. 1990) (defining "sterilization" as "[t]he act or process by which an individual is rendered incapable of . . . reproduction, as by vasectomy, salpingectomy, or castration"); Richard Sloane, The Sloane-Dorland Annotated Medical-Legal Dictionary 670 (1987) (defining "sterilize" as "to render incapable of reproduction"); Webster's Third New International Dictionary Unabridged 2238 (1986) (defining "sterilization" as "a procedure by which a human . . . is made incapable of reproduction"). Contrary to Doherty's assertion that the *Black's* definition is unreliable because it dates to 1905, that the definition is of such long standing suggests that the Legislature would have been clear had it intended to expand the commonly-understood meaning—the

same meaning that it used in 34-B M.R.S. § 7003(9) in 1984—to encompass Doherty's situation.

[¶24]  For these reasons, we conclude that the "failed sterilization procedure" exception is not applicable on the facts presented to us. Accordingly, our answer to the third certified question is that pursuant to section 2931, Doherty may not recover any damages on her claims against Merck or the United States.[5]

The entry is:

> We answer the certified questions as follows: "We answer the first certified question in the affirmative.  Accordingly, we decline to answer the second certified question.  In answer to the third certified question, pursuant to 24 M.R.S. § 2931 the plaintiff may not recover any damages on her claims against either defendant."

---

[5]  Doherty asserts that this result violates several provisions of the United States and Maine Constitutions. The United States District Court did not certify a question of the statute's constitutionality to us, and we decline to address that issue before the federal court has done so in this federal case.  *See* M.R. App. P. 25(b) ("The certificate . . . shall contain . . . the question or questions of law to be answered.").

SAUFLEY, C.J., with whom ALEXANDER and GORMAN, JJ., join, concurring.

[¶25]  Although we concur with the Court's answers, we write separately to make clear the very limited scope of the questions presented and our responses to those questions.

[¶26]  The federal court has not asked us to determine whether the wrongful life statute goes beyond declaring that the birth and the life of a healthy child do not constitute damages, that is, legally recognizable injury. 24 M.R.S. § 2931(1) (2016).  Nor has it asked us to determine whether, if the statute does go beyond the gender-neutral declaration that a child is not an "injury," doing so constitutes an unconstitutional violation of a woman's right to equal protection under the law.  *Id.*

[¶27]  Moreover, in light of the questions presented, we are not required to consider whether a person may bring claims of ordinary medical malpractice for any negligent medical care provided to a person who sought medical care to avoid pregnancy as a result of a medical condition.  For example, a person who suffers from certain illnesses may be seriously or fatally harmed by a pregnancy.  In answering the questions presented, we are not required to consider whether a claim of medical malpractice for contraception failure may proceed in those circumstances.  Put another way, those injuries would be

factually distinct from the nature of the claim before the federal court related to the birth of an unanticipated but healthy child. In the end, we are not asked to determine whether that type of harm to a person, unrelated to the child, falls outside of the statute's limitation on negligence actions.

[¶28]  Finally, although we cannot disagree with the Court's careful parsing of the concepts of "sterilization," particularly as used in other statutory contexts, it is clear from the lengths the Court goes to in attempting to distinguish various methods of permanent or semi-permanent contraception that medicine has outstripped the statutory definitions and that further attention to the language of 24 M.R.S. § 2931 (2016) is needed.

[¶29]  In sum, we write to clarify that we do not opine on the constitutionality of the statute, and we do not opine on whether a person may maintain a claim for other types of injuries—unrelated to the existence of a healthy child—arising from allegations of medical malpractice in the context of a pregnancy.

---

Laura H. White, Esq. (orally), Bergen & Parkinson, LLC, Kennebunk, for appellant Kayla Doherty

Paul McDonald, Esq., (orally), and Daniel J. Mitchell, Bernstein Shur, Portland, and Thomas J. Yoo, Esq., Reed Smith LLP, Los Angeles, California, for appellee Merck & Co., Inc.

Thomas E. Delahanty II, United States Attorney, and Andrew K. Lizotte, Asst. U.S. Atty. (orally), Office of the United States Attorney, Portland, for appellee United States of America

Janet T. Mills, Attorney General, and Susan P. Herman, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

United States District Court for the District of Maine docket number 1:15-cv-129-DBH
FOR CLERK REFERENCE ONLY