MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2023 ME 63
Docket:        Ken-22-392
Argued:        June 7, 2023
Decided:       September 12, 2023
Revised:       November 7, 2023

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, LAWRENCE, and DOUGLAS,JJ.
Majority:      STANFILL, C.J., and MEAD, JABAR, HORTON, LAWRENCE, and DOUGLAS, JJ.
Concurrence:   CONNORS, J.

## STATE OF MAINE

v.

## ROBERT SANTERRE

JABAR, J.

[¶1]  Robert Santerre appeals from the trial court's (Kennebec County, *Cashman, J.*) imposition of consecutive license suspensions after he admitted to three charges of violating 29-A M.R.S. § 2413-A(1) (2023).  On appeal, Santerre contends that the trial court erred when it interpreted section 2413-A to (1) permit a determination that Santerre had committed three civil violations and (2) authorize the trial court to impose the consecutive license suspensions. We conclude that the trial court did not err in interpreting section 2413-A to permit a determination that Santerre had committed three civil violations and to authorize consecutive license suspensions, nor did it abuse its discretion

when it imposed the three license suspensions consecutively. We affirm the penalties accordingly.

## I. BACKGROUND

[¶2] On May 20, 2021, at 2:00 p.m., Santerre struck three pedestrians with his vehicle. While driving over the speed limit, Santerre became drowsy and crossed the double-yellow line, striking three pedestrians on the other side of the road, resulting in the deaths of all three people. In its investigation, law enforcement found no evidence of reckless or negligent driving. There was no evidence to suggest that Santerre was using a phone or was impaired by alcohol or drugs, and Santerre did not have a known preexisting medical condition.

[¶3] On December 3, 2021, the State charged Santerre with three counts of committing a motor vehicle violation resulting in death, pursuant to 29-A M.R.S. § 2413-A(1). On August 10, 2022, the trial court held a hearing during which Santerre admitted to all three counts. On November 9, 2022, the trial court held a hearing to determine what penalty to impose for Santerre's violations of section 2413-A. The trial court heard presentations from the State and Santerre, and received victim impact statements from the victims' families and statements of support for Santerre.

[¶4]  In determining an appropriate penalty, the trial court noted that the Legislature created section 2413-A expressly for the purpose of addressing circumstances such as the accident at issue.  The trial court discussed the need for public safety, expressing its concern that Santerre had only been driving for approximately ten minutes before falling asleep at the wheel and killing the victims, and commented that distracted driving comes in many forms, including driving while fatigued, which "has an impact on people's privilege to operate a motor vehicle in this state."  The trial court also acknowledged the numerous statements of support for Santerre as well as Santerre's lack of prior driving record and his history of being a law-abiding citizen.

[¶5]  At the conclusion of the hearing, the trial court imposed a $5,000 fine and a three-year license suspension for each of the three counts of committing a motor vehicle violation resulting in death, with the fines being cumulative and the suspensions to be imposed consecutively, totaling $15,000 in fines and a nine-year license suspension.  In lieu of paying the cumulative $15,000 fine, the trial court presented Santerre with an alternative option to

4

donate $5,000 to a memorial for the victims.[1]  Santerre timely appealed the nine-year license suspension.  M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

[¶6]  Santerre makes two arguments on appeal.  First, he contends that the trial court erred in its interpretation of section 2413-A by considering the accident, which resulted in the deaths of three people, as three separate violations of the statute permitting three separate penalties, rather than as one violation of the statute permitting only one penalty.  Second, Santerre contends that the court erred when it imposed consecutive license suspensions for the three violations because the statute does not explicitly authorize consecutive license suspensions, and even if the statute allows consecutive suspensions, 17-A M.R.S. § 1608 (2023) does not permit consecutive suspensions on these facts.

## A.    Legal Overview

[¶7]  Santerre raises questions of statutory interpretation concerning section 2413-A, which is a civil violation for which a trial court may impose only civil penalties.  We begin this discussion with an overview of (1) our canons of

---

[1]  Santerre chose this alternative penalty and made the $5,000 donation to a memorial for the victims.  On appeal, Santerre does not challenge the imposition of the fine and is not seeking reimbursement for the donation.

statutory interpretation, (2) the purposes of civil penalties, and (3) section 2413-A.

### 1. Statutory Interpretation

[¶8] Statutory interpretation is a question of law that we review de novo. *State v. Gagne*, 2019 ME 7, ¶ 16, 199 A.3d 1179. "In interpreting a statute, our single goal is to give effect to the Legislature's intent in enacting the statute." *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 19, 107 A.3d 621. "The first step in statutory interpretation requires an examination of the plain meaning of the statutory language in the context of the whole statutory scheme." *Sunshine v. Brett*, 2014 ME 146, ¶ 13, 106 A.3d 1123 (quotation marks omitted). "If the statutory language is silent or ambiguous, we then consider other indicia of legislative intent." *Dyer v. Dyer*, 2010 ME 105, ¶ 7, 5 A.3d 1049.

[¶9] We are guided by a host of principles when interpreting the plain meaning of a statute. *See Dickau*, 2014 ME 158, ¶¶ 20-22, 107 A.3d 621. "In construing the plain meaning of the language, we seek to give effect to the legislative intent and construe the language to avoid absurd, illogical, or inconsistent results." *Sunshine*, 2014 ME 146, ¶ 13, 106 A.3d 1123 (quotation marks omitted). "All words in a statute are to be given meaning, and none are to be treated as surplusage if they can be reasonably construed." *Cobb v. Bd. of*

6

*Counseling Pros. Licensure*, 2006 ME 48, ¶ 11, 896 A.2d 271. We also consider the subject matter, design, and structure of the statute, as well as the consequences of specific interpretations. *Dickau*, 2014 ME 158, ¶¶ 20-22, 107 A.3d 621.

### 2.    Purposes of Civil Penalties

[¶10] A civil violation is "[a] law or ordinance which prohibits defined conduct, but does not provide an imprisonment penalty." 17-A M.R.S. § 4-B(3) (2023). Civil penalties, unlike criminal punishments, are coercive and are imposed to incentivize compliance with the law rather than to punish. *City of Lewiston v. Verrinder*, 2022 ME 29, ¶ 22, 275 A.3d 327. We generally consider a suspension of a driver's license nonpunitive in nature because the suspension is intended to provide the public with safe roadways and to protect the nonpunitive objective of public safety. *Richard v. Sec'y of State*, 2018 ME 122, ¶¶ 13, 18, 192 A.3d 611. "[S]uspension of an operator's license does not tend to make the offense criminal if it is not imposed to punish the individual but reflects a judgment that the violator should not continue to drive." *State v. Anton*, 463 A.2d 703, 707 (Me. 1983). Where violating a statute subjects the violator to the imposition of a fine, the statute is penal, and we construe the statute strictly. *State v. Chittim*, 2001 ME 125, ¶ 5, 775 A.2d 381. However,

construing the statute strictly is "subordinate" to the rule "that the judicial interpretation must be reasonable and sensible, with a view to effectuating the legislative design and the true intent of the Legislature." *State v. Millett*, 392 A.2d 521, 525 (Me. 1978). Whether interpreting the statute as penal or regulatory, or interpreting the provisions of the statute liberally or strictly, a court has the inherent authority under the common law to impose consecutive suspensions. Neither the plain language of the statute nor any other legal doctrines limit the court's inherent authority. *See infra* ¶¶ 17-20.

### 3. 29-A M.R.S. § 2413-A

[¶11] There are three subsections contained in 29-A M.R.S. § 2413-A.[2] Under subsection 1, "[a] person commits the civil violation of motor vehicle violation resulting in death if that person, while operating a motor vehicle and

---

[2] Title 29-A M.R.S. § 2413-A (2023) reads:

> **1. Offense**. A person commits the civil violation of motor vehicle violation resulting in death if that person, while operating a motor vehicle and committing a traffic infraction, causes the death of another person.
>
> **2. Pleading and proof.** The State must prove that the defendant's committing a traffic infraction while operating a motor vehicle caused the death under subsection 1. The court shall apply Title 17-A, section 33 in assessing any causation under this section.
>
> **3. Penalties.** A person who violates this section commits a civil violation for which a fine of not more than $5,000 may be adjudged. Any portion of the fine adjudged may be satisfied by a court-ordered requirement of community service work. The court shall also impose a license suspension of no less than 14 days and up to 4 years.

committing a traffic infraction, causes the death of another person." *Id.*
§ 2413-A(1). Subsection 2 requires the State to prove that the death was
caused as a result of the defendant "committing a traffic infraction while
operating a motor vehicle" and indicates that the court "shall apply [17-A M.R.S.
§ 33 (2023)] in assessing" causation. *Id.* § 2413-A(2). Under subsection 3, "[a]
person who violates [section 2413-A] commits a civil violation for which a fine
of not more than $5,000 may be adjudged. Any portion of the fine adjudged
may be satisfied by a court-ordered requirement of community service work.
The court shall also impose a license suspension of no less than 14 days and up
to 4 years." *Id.* § 2413-A(3).

## B. Analysis

### 1. Separate Violations

[¶12] Santerre contends that the trial court erred when it considered the
accident as three separate violations of the statute because of the three deaths
that occurred, rather than one violation because the deaths arose out of a single
course of conduct or occurrence.

[¶13] The plain meaning of the language at section 2413-A(1)
demonstrates that the trial court did not err when it found that Santerre
violated the statute three times. Section 2413-A(1) prohibits causing the death

of "*another person*," not "one or more other persons," while committing a traffic infraction. Each death caused by a traffic violation forms the basis for a separate civil violation, and because Santerre's traffic infractions resulted in the deaths of three people, Santerre committed three civil violations. This interpretation—that separate violations may be charged for each basis of liability—is consistent with analogous Maine criminal statutes[3] and charging practices. *See, e.g.*, *State v. Weddle*, 2020 ME 12, ¶¶ 3, 8, 224 A.3d 1035 (charging two counts of manslaughter and two counts of causing death while operating under the influence when defendant's conduct resulted in the deaths of two people); *Carrier v. Sec'y of State*, 2012 ME 142, ¶ 2, 60 A.3d 1241 (affirming judgment where defendant pleaded guilty to three counts of vehicular manslaughter due to defendant's conduct resulting in the deaths of three people); *see also A.G. v. Dep't of Transp.*, 218 A.3d 491, 496-97 (Pa. Commw. Ct. 2019) (affirming consecutive license suspensions when licensee had killed two people in the course of careless driving because each death formed the basis of a separate violation of the statute). Thus, if a driver's

---

[3] None of the analogies to criminal law in this opinion should be read to permit trial courts to use criminal statutes as controlling law when imposing civil penalties. As we discuss later, *infra* ¶ 21, the trial court correctly rejected relying on the sentencing structure set out in Title 17-A, including 17-A M.R.S. § 1608 (2023), in its analysis and merely referenced criminal cases for illustrative purposes where necessary. *See City of Lewiston v. Verrinder*, 2022 ME 29, ¶ 22, 275 A.3d 327.

violation of section 2413-A results in the deaths of multiple people, the driver violates section 2413-A multiple times.

[¶14]  The State charged Santerre with three counts of motor vehicle violation resulting in death, with each count naming a different victim.  Santerre made three admissions to violating the statute.  As in the analogous criminal cases, nothing prohibits the State from charging three civil violations arising from a single accident if the accident results in three deaths.  Therefore, the trial court did not err in determining that Santerre had violated the statute three times because the plain language of the statute demonstrates that a single accident resulting in the death of three victims may give rise to three separate violations of the statute.

### 2.    Consecutive License Suspensions

[¶15]  Santerre next contends that the trial court erred by (1) imposing consecutive license suspensions because 29-A M.R.S. § 2413-A does not expressly authorize the court to do so and (2) not applying the factors from 17-A M.R.S. § 1608, which, he argues, would not have permitted consecutive sentencing on these facts.

[¶16]  We conclude that the trial court did not err in interpreting section 2413-A to allow for consecutive suspensions because (1) the plain language of

the statute demonstrates that the Legislature did not limit the trial court's inherent authority to impose consecutive suspensions and (2) the trial court did not abuse its discretion when it imposed the consecutive suspensions.

### a. Inherent Authority

[¶17] Santerre argues that the power to determine whether the penalties run consecutively originates with the Legislature, and in the absence of a legislative mandate to have the suspensions run consecutively, the court does not have the authority to impose consecutive license suspensions. We disagree. Unless constrained by the Legislature, the State or Federal Constitutions, or another appropriate source of law, trial courts have the inherent authority under common law to impose consecutive sentences or penalties in criminal and civil cases when those sentences or penalties are reasonably supported by the facts and law.

[¶18] As Justice Cardozo explained in *People v. Ingber*, "the discretionary power of the court to impose a cumulative sentence in cases not covered by the mandatory statute remains, undiminished, as it was at common law." 162 N.E. 87, 88 (N.Y. 1928). In *Ingber*, the New York Court of Appeals determined that where there was "no token of a purpose to curtail discretionary power in situations left uncovered" in a statute, that the court would not displace the

court's common-law discretionary power to sentence concurrently. *Id.* at 88-89. As the court explained, "[i]t is one thing to say that the kind and measure of the punishment to be inflicted shall be governed by the statute. It is another thing to say that there shall be a rejection of common-law tests in determining the form of sentence whereby the mandate of the statute may best be put into effect." *Id.* at 89. The court ultimately determined that "[t]he statute answers that question in some situations, and omits to answer it in others. The courts must fill the gap. A grant of power to sentence for a stated term without other limitation is to be read as a like grant of power would be read at common law." *Id.* We agree with Justice Cardozo's sound reasoning and apply the same logic to the present case, believing that the common-law discretionary power applies equally to civil penalties as it does to criminal punishments.

[¶19] The fact that the Legislature both limits and mandates consecutive sentences in other contexts supports the principle that the authority to impose consecutive penalties or punishments originates with the courts, and where the Legislature has not constrained that authority, the court has the inherent authority to impose consecutive penalties and punishments within its discretion. For example, section 1608 does not grant trial courts the authority to impose consecutive criminal sentences, rather, it implicitly recognizes the

trial court's inherent authority under common law to sentence consecutively and places limitations on that authority to impose consecutive sentences. Whereas the Legislature opted to constrain the court's authority in section 1608, the Legislature mandated the imposition of consecutive license suspensions in 29-A M.R.S. § 2464(4) (2023). Both 17-A M.R.S. § 1608 and 29-A M.R.S. § 2464(4) demonstrate that although the Legislature may regulate a trial court's authority to impose consecutive sentences, the court's authority to impose consecutive sentences does not originate with the Legislature; it is implicit to the adjudicatory powers of the court. If the court did not have the inherent authority to impose consecutive sentences there would be no need for the Legislature to enact statutes both limiting and mandating consecutive sentences. *See* 29-A M.R.S. § 2464(4); 17-A M.R.S. § 1608; *Shepherd v. State*, 155 N.E.3d 1227, 1241-42 (Ind. Ct. App. 2020) (vacating consecutive license suspensions when a statute mandated concurrent suspensions for violations that arose from the same episode).

[¶20] The statute before us contains a provision that mandates that the court "impose a license suspension of no less than 14 days and up to 4 years" but is silent as to whether the court may impose consecutive suspensions in a case involving multiple counts. If the Legislature had wanted to limit the trial

14

court's authority to impose consecutive suspensions in section 2413-A in the way that it has limited consecutive criminal sentencing, then it could have included such a provision in Title 29-A. *See Desgrosseilliers v. Auburn Sheet Metal*, 2021 ME 63, ¶ 14, 264 A.3d 1237 (alterations and quotation marks omitted) ("It is apparent that the Legislature knew how to create statutory language that allows the intended result in other provisions. Consequently, the absence of such language in this provision demonstrates the Legislature's intent to provide for a different result."). There is no civil traffic statute conferring discretionary authority upon a court to impose consecutive license suspensions because there does not need to be one. Because the Legislature has not constrained the trial court's inherent authority, we read the silence to permit trial courts to impose consecutive license suspensions for multiple violations of section 2413-A. In conclusion, the plain language of the statute demonstrates that the trial court did not err in interpreting section 2413-A to allow it to impose consecutive license suspensions because neither the Legislature nor our jurisprudence limits the trial court's authority.

###     b.     Discretion

[¶21] Having determined that the trial court did not exceed its inherent authority by imposing consecutive license suspensions, we now consider

whether the trial court abused its discretion when it imposed consecutive penalties in this case. *See Town of Levant v. Seymour*, 2004 ME 115, ¶ 29, 855 A.2d 1159 (reviewing the civil penalties imposed for abuse of discretion). The trial court did not err when it determined that it should not rely on 17-A M.R.S. § 1608 in its analysis because the State charged Santerre with only civil violations that could not result in Santerre's imprisonment. *See Verrinder*, 2022 ME 29, ¶ 22, 275 A.3d 327 ("The court's analogy to criminal law is inapposite because, as we have discussed, civil penalties are coercive and are imposed to incentivize compliance with ordinances rather than to punish." (citations omitted)). To act within its discretion, the trial court needed to fashion a penalty that would coerce and incentivize Santerre to comply with the law and promote public safety by preventing Santerre from driving. *See id.*; *Richard*, 2018 ME 122, ¶¶ 13, 18, 192 A.3d 611; *Anton*, 463 A.2d at 707.

[¶22] The record sufficiently demonstrates that the trial court intended to impose penalties to both protect public safety by keeping Santerre off the road and to coerce Santerre and others into complying with driving laws. In determining an appropriate penalty, the trial court noted that the Legislature created section 2413-A specifically to address the circumstances that occurred in the present case. The trial court discussed the need for public safety,

expressing its concern that Santerre had been driving for only approximately ten minutes before falling asleep at the wheel, which suggests that the trial court fashioned the penalty to promote public safety by preventing Santerre from driving. The trial court also discussed the need for people to follow driving laws, stating that distracted driving comes in many forms, including driving while fatigued, which "has an impact on people's privilege to operate a motor vehicle in this state," suggesting that the trial court intended the penalties to coerce both Santerre and other drivers into following driving laws. Therefore, after considering the record, we conclude that the trial court did not abuse its discretion when it imposed consecutive suspensions.

### III. CONCLUSION

[¶23] In conclusion, we affirm the penalties imposed by the trial court because we hold that the plain language of section 2413-A (1) authorizes separate violations for each death that occurs as a result of a driving violation and (2) authorizes trial courts to impose consecutive license suspensions when, in the trial court's discretion, the case presents appropriate facts for such an imposition. We further hold that the trial court did not abuse its discretion when it imposed the consecutive suspensions because the suspensions were consistent with the purposes of civil penalties.

The entry is:

Judgment affirmed.

———————————

CONNORS, J., concurring.

[¶24]  Although I agree that it was within the trial court's discretion to impose consecutive, i.e., to "stack,"[4] license suspensions in this matter, I arrive at this conclusion following a different route.

[¶25]  Title 29-A M.R.S. § 2413-A(3) (2023) imposes a fine, which, as the majority correctly notes, is penal in nature and, therefore, requires a strict statutory construction.  Court's Opinion ¶ 10.  Section 2413-A(3) also imposes a license suspension, which, as the majority also notes, is not punitive in character.  Court's Opinion ¶ 10.  Nonpenal statutes enacted for public safety, health, or welfare are liberally construed to advance their purposes.  *See* 39A C.J.S. *Health & Environment* § 6, Westlaw (database updated August 2023); 73 Am. Jur. 2d *Statutes* § 169, Westlaw (database updated June 2023); Sutherland Statutes and Statutory Construction § 60:2, Westlaw (database updated November 2022) (listing public health and safety acts and licensing statutes as being subject to a broad construction).  As is the case here, a statute

---

[4]  *See, e.g.*, *Johnson v. State ex rel. Dep't of Pub. Safety*, 2 P.3d 334, 336 (Okla. 2000); *State v. Prine*, 687 So. 2d 1116, 1117 (Miss. 1996).

may include both penal and nonpenal components. *See Denutte v. U.S. Bank, N.A.*, 2019 ME 124, ¶ 13 n.5, 213 A.3d 619.

[¶26]  Given that the license suspension component of section 2413-A(3) is subject to a liberal construction, the lack of a stacking provision should not be read as foreclosing stacking in circumstances where stacking is deemed necessary to protect public safety.[5]

[¶27]  Applying a liberal construction, I conclude that it was within the trial court's discretion, focusing on the goal of public safety, to stack Santerre's license suspensions based on the circumstances, such as the fact that Santerre had only been driving a short time prior to falling asleep at the wheel.

---

Bruce W. Hepler, Esq. (orally), and Benjamin E. Hartwell, Esq., Law Offices of Bruce W. Hepler, LLC, Portland, for appellant Robert Santerre

Maeghan Maloney, District Attorney (orally), Kennebec County District Attorney's Office, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number VI-2021-48
FOR CLERK REFERENCE ONLY

---

[5]  In contrast, under a strict construction, the omission of language permitting stacking could suggest that stacking was not intended. *See* R. D. Hursh, Annotation, *Recovery of Cumulative Statutory Penalties*, 71 A.L.R.2d 986 § 2 (1960) (explaining that "penalty provisions are strictly construed in favor of the person whom it is sought to penalize, with the result that, in the absence of clear statutory language to the contrary, penalties are held noncumulative" (footnote omitted)).  Relatedly, an analogy to criminal sentencing is imperfect because the imposition of consecutive sentences has been constrained by the Legislature when multiple violations occur, such as here, within one episode. *See* 17-A M.R.S. § 1608 (2023); *State v. Murray-Burns*, 2023 ME 21, ¶¶ 19-20, 290 A.3d 542.