MAINE SUPREME JUDICIAL COURT            Reporter of Decisions

Decision:      2025 ME 4
Docket:        Cum-23-508
Argued:       October 9, 2024
Decided:      January 14, 2025

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

# STATE OF MAINE

v.

# BILLY L. BEAULIEU

HORTON, J.

[¶1] Billy L. Beaulieu, who was charged with criminal OUI (Class C), 29-A M.R.S. § 2411(1-A)(B)(2) (2024), appeals from an order of the trial court (Cumberland County, *McKeon, J.*) denying his motion to dismiss the charges against him. In his motion and on appeal, Beaulieu claims that he is immune from prosecution under Maine's Good Samaritan statute, 17-A M.R.S. § 1111-B (2023).[1] He argues that the statute's threshold requirements for immunity—

---

[1] The 2023 version of the Maine Revised Statutes was not published until after the conduct giving rise to the charge against Beaulieu is alleged to have occurred. We nonetheless cite 17-A M.R.S. § 1111-B (2023) in this opinion because it contains the statutory language that was in effect when the criminal conduct is claimed to have occurred. Specifically, after the publication of the 2022 version of the Maine Revised Statutes but effective before the criminal conduct in this case is alleged to have taken place, the Legislature repealed and replaced, and also amended, section 1111-B. P.L. 2021, ch. 724, § 1 (effective Aug. 8, 2022) (codified at 17-A M.R.S. § 1111-B (2023)); P.L. 2021, ch. 759, § C-1 (effective Aug. 8, 2022) (codified at 17-A M.R.S. § 1111-B(1)(B) (2023)).

that there be "a call for assistance for a suspected drug-related overdose" at the location of a "medical emergency," *id.*—were satisfied based on evidence showing that a driver who saw Beaulieu's car sitting beside an interstate highway exit asked the police to check on the vehicle because she was concerned that the driver may have had a "medical event." Given the statute's plain language, we disagree that either the "call for assistance for a suspected drug-related overdose" requirement or the "medical emergency" requirement was satisfied and affirm the court's denial of Beaulieu's motion to dismiss.

## I. BACKGROUND

[¶2] The procedural history and facts are drawn from the record and the trial court's findings of fact, which are supported by competent evidence introduced at the hearing on Beaulieu's motion. *See* 17-A M.R.S. § 1111-B(4); *55 Oak St. LLC v. RDR Enters., Inc.*, 2022 ME 28, ¶ 2, 275 A.3d 316.

[¶3] On October 27, 2022, Beaulieu was charged by complaint with one count of criminal OUI (Class C),[2] 29-A M.R.S. § 2411(1-A)(B)(2). He pleaded not

---

The statute has also been amended since the alleged criminal conduct is said to have occurred, but these amendments were not given retroactive effect. *See, e.g.*, P.L. 2023, ch. 161, § 1 (effective Oct. 25, 2023) (codified at 17-A M.R.S. § 1111-B(1)(C) (2024)). One of the amendments excludes criminal OUI from the crimes for which a defendant may be immune from prosecution. P.L. 2023, ch. 507, § 3 (effective Aug. 9, 2024) (to be codified at 17-A M.R.S. § 1111-B(1)(A)(22) (2025)); *see* 29-A M.R.S. § 2411 (2024).

[2] Beaulieu's criminal OUI charge is Class C because he is alleged to have been convicted of two prior OUI charges in the past ten years. *See* 29-A M.R.S. § 2411(5)(C).

guilty and then filed a motion to dismiss, arguing that he was immune from prosecution under the Good Samaritan statute, 17-A M.R.S. § 1111-B, because the report of the officer who arrested him indicated that Beaulieu appeared to be under the influence of one or more drugs.

[¶4] On December 5, 2023, the court held a hearing on Beaulieu's motion to dismiss. No witnesses testified at the hearing, but Beaulieu offered two exhibits in evidence: a handwritten witness statement and a police report from the officer who was contacted by the witness. The State waived any hearsay objection, and the two exhibits were admitted for the purpose of Beaulieu's motion.[3]

[¶5] In the handwritten witness statement, the witness stated that she was driving north on I-295 and taking the Brunswick exit when she "noticed a vehicle parked a little sideways on the left hand shoulder which [she] thought was a little odd." The witness went on to say that, upon returning home almost two hours later, she noticed the vehicle again. She reported being "very worried the driver was [having] or had a medical event." She wrote that,

---

[3] Because the State waived its hearsay objection, we do not address the admissibility of out-of-court witness statements in the context of a hearing on a motion to dismiss on the ground of immunity under section 1111-B. *See Morey v. Stratton*, 2000 ME 147, ¶¶ 8-9, 756 A.2d 496.

shortly thereafter, she went to the Brunswick Police Station and made a report about the vehicle.

[¶6]  The police report written by the officer who responded may be summarized as follows.

[¶7]  At 8:59 p.m. on August 22, 2022, a woman approached the officer in the Police Station parking lot and requested that he check on a vehicle beside the roadway at the Interstate 295 exit into Brunswick.  When he arrived at the scene, he observed a man in wet clothes who was slumped over in the driver's seat of the vehicle.  The car window was open and it had been raining.  When the officer reached into the car to shake and rouse the man, the man sat up with "a long glob of drool . . . hanging from his mouth."  The man had small pupils, droopy eyelids, and heavily slurred speech that in the officer's estimation were all "consistent with drug use."  The man identified himself as Billy Beaulieu. Beaulieu said that he had pulled over to the roadside while en route from Brunswick to Bangor because he was tired, but his vehicle was on the highway exit leading to Brunswick.  Beaulieu admitted to taking Suboxone and gabapentin earlier in the day.  Based on his observations, the officer asked Beaulieu to undergo several field sobriety tests, all of which Beaulieu failed, in part because he had difficulty staying upright.  After placing Beaulieu under

arrest, the officer transported Beaulieu to the Police Station. Beaulieu was released on bail.

[¶8] Nothing in the officer's report indicates that Beaulieu requested, required, or received any form of medical assistance or treatment before, during, or after the event or that the officer viewed the event as a "medical emergency."

[¶9] After admitting the exhibits and hearing oral argument from Beaulieu and the State, the trial court orally denied Beaulieu's motion to dismiss and issued the following findings of fact:

> I'm making a factual finding that I do believe I'm taking her statement and what she was thinking at the time before she went to the police station and I am assuming, for the record [that] there's a factual determination. I think what she said she was worried about at the time is probably more accurate—even though she said it afterward[—]than what the police officer recorded as thinking was the concern at the beginning. So[,] I am going to find that she was worried that the driver had a medical event and that that's why she went to the police officer.
>
> And I will also find factually that the police officer went there to the scene because of her concern that he had a medical event.
>
> . . . .
>
> . . . [But] [i]t wasn't in response to a call for assistance for a suspected drug-related overdose.

Beaulieu timely appealed. *See* M.R. App. P. 2B(b)(1).

## II. DISCUSSION

## A.    Interlocutory Review of an Assertion of Immunity

[¶10]  Because Beaulieu has appealed from an interlocutory order, our analysis focuses first on whether his interlocutory appeal is reviewable, as he contends, under the "death knell" exception to the final judgment rule.  The final judgment rule ensures judicial economy and avoids "interruption, delay, duplication, and harassment" by generally preventing parties from appealing from orders that precede the rendering of a final judgment.  *State v. Me. State Emps. Ass'n*, 482 A.2d 461, 463-64 (Me. 1984); *Liberty v. Bennett*, 2012 ME 81, ¶ 15, 46 A.3d 1141.  "Exceptions to the final judgment rule have been recognized and applied in those instances where its application would not further [these] purpose[s]." *Dep't of Hum. Servs. v. Lowatchie*, 569 A.2d 197, 199 (Me. 1990).  At issue here is the "death knell" exception, which "permits an appeal from an interlocutory order where *substantial rights* of a party will be irreparably lost if review is delayed until final judgment." *Webb v. Haas*, 1999 ME 74, ¶ 5, 728 A.2d 1261 (emphasis added and quotation marks omitted).

[¶11]  We have applied the death knell exception when the appellant's "substantial rights" were textually linked to the United States and Maine Constitutions.  *E.g., State v. Hanson*, 483 A.2d 723, 724 (Me. 1984) (permitting

review of a motion to dismiss on double jeopardy grounds); *In re Bailey M.*, 2002 ME 12, ¶¶ 6-8, 788 A.2d 590 (allowing interlocutory review of a denied motion to open proceedings to the public, which implicated the First Amendment). We have also applied the exception in civil cases when the appeal is from the denial of a claim of immunity from suit. *Webb,* 1999 ME 74, ¶ 5, 728 A.2d 1261 (permitting an appeal from the denial of a motion for summary judgment that claimed qualified immunity); *Rodriguez v. Town of Moose River*, 2007 ME 68, ¶¶ 16-18, 922 A.2d 484 (holding that an appeal from the denial of a motion claiming statutory discretionary function immunity was reviewable); *Geary v. Stanley Med. Rsch. Inst.*, 2008 ME 9, ¶ 11, 939 A.2d 86 (considering an interlocutory appeal based on a claim of statutory immunity under Maine's version of the Uniform Anatomical Gift Act). The rationale for applying the death knell exception in the civil cases is that "immunity confers more than immunity from damages; it is intended to provide immunity from suit." *Webb*, 1999 ME 74, ¶ 5, 728 A.2d 1261 (quotation marks omitted); *see also Smith v. Yankee Constr. Corp.*, 625 A.2d 904, 906 (Me. 1993) ("[T]he immunity in question [is] an entitlement to immunity from suit rather than a defense to liability, and it is effectively lost if a case is erroneously permitted to go to trial." (quotation marks omitted)).

8

[¶12]  This appeal is similar to *Geary* and *Rodriguez* because Beaulieu challenges the denial of a dispositive motion claiming statutory immunity. *See* 17-A M.R.S. § 1111-B.  However, the State contends that the reasoning in civil immunity cases does not carry over to criminal cases.  This argument is not persuasive.  The limitations on individual rights that can accompany a criminal prosecution—notably arrest, bail, searches, and seizures—are more severe than those at issue in a civil case.  *See, e.g.*, Edward L. Barrett, Jr., *Personal Rights, Property Rights, and the Fourth Amendment*, 1960 Sup. Ct. Rev. 46, 46 ("A police decision to arrest an individual and initiate the process of criminal prosecution is in itself a significant invasion of personal liberty . . . .").  Moreover, the rationale we cited in *Hanson* as to double jeopardy—that "[t]he right to be free from exposure to double jeopardy requires that a challenged prosecution be subject to review before the exposure occurs," 483 A.2d at 724, applies equally to a challenge to a criminal prosecution based on immunity.

[¶13]  We conclude that Beaulieu's interlocutory appeal is reviewable under the death knell exception.

B.    **Applicability of 17-A M.R.S. § 1111-B**

[¶14]    Beaulieu's appeal raises an issue of statutory interpretation concerning 17-A M.R.S. § 1111-B.  "Statutory interpretation is a question of law

that we review de novo." *State v. Santerre*, 2023 ME 63, ¶ 8, 301 A.3d 1244. When interpreting a statute, our "single goal is to give effect to the Legislature's intent in enacting the statute." *Id.* (quotation marks omitted). "The first step in statutory interpretation requires an examination of the plain meaning of the statutory language in the context of the whole statutory scheme." *Sunshine v. Brett*, 2014 ME 146, ¶ 13, 106 A.3d 1123 (quotation marks omitted). Then, "[o]nly if the statutory language is ambiguous—that is, reasonably susceptible to more than one interpretation—will we consider other indicia of legislative intent." *Id.* Legislative history is one such indicator of the Legislature's intent. *See Davis Forestry Prods., Inc. v. DownEast Power Co.*, 2011 ME 10, ¶ 9, 12 A.3d 1180.

[¶15] We consider a variety of principles when analyzing a statute's plain language. *See Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶¶ 19-23, 107 A.3d 621. To ascertain a statute's plain meaning, "we examine the entirety of the statute, 'giving due weight to design, structure, and purpose as well as to aggregate language.'" *Id.* ¶ 22 (quoting *In re Hart*, 328 F.3d 45, 48 (1st Cir. 2003)). In doing so, "we may reject any construction that . . . creates absurd, illogical, unreasonable, inconsistent, or anomalous results if an alternative interpretation avoids such results." *Dorsey v. N. Light Health*, 2022 ME 62, ¶ 11,

288 A.3d 386 (quotation marks omitted). Further, "[w]e reject interpretations that render some language mere surplusage." *State v. McLaughlin*, 2018 ME 97, ¶ 9, 189 A.3d 262 (quotation marks omitted). Finally, we may consider grammatical principles to interpret a word or clause within the context of a sentence. *See Franklin Sav. Bank v. Bordick*, 2024 ME 17, ¶¶ 24-25, 314 A.3d 181; *see also* Office of the Revisor of Statutes, *Maine Legislative Drafting Manual*, pt. III, ch. 1, § 13 at 90 (1st ed. Oct. 1990, rev. Oct. 2016) ("Modifiers should be placed as close as possible to the words they modify.").

[¶16] At issue in this case is the interpretation of the opening paragraph of section 1111-B, which outlines the circumstances under which a defendant is immune from prosecution. The paragraph states, in relevant part:

> When a medical professional or law enforcement officer has been dispatched to the location of a medical emergency in response to a call for assistance for a suspected drug-related overdose, the following provisions apply to any protected person at the location when the medical professional or the law enforcement officer arrives.

17-A M.R.S. § 1111-B.

[¶17] Although we had the occasion to analyze the version of section 1111-B effective in 2021, 17-A M.R.S. § 1111-B (2021), in *State v. Tripp*, 2024 ME 12, 314 A.3d 101, we held that the version of the statute that became effective in August 2022 did not apply retroactively to the April 2021 call for

assistance in that case. *Id.* ¶¶ 12-16. Hence, our interpretation of the version at issue here presents a question of first impression.[4]

[¶18]   Beaulieu contends that the clause "in response to a call for assistance for a suspected drug-related overdose" is ambiguous. He states that it is "unclear whether the person calling for assistance must themselves suspect a drug-related overdose" or whether the statute means that courts must "consider objectively whether the facts constitute a suspected drug-related overdose." Beaulieu reasons that, given this ambiguity, courts should apply an objectively-framed test, asking whether the objective circumstances suggest that a reasonably prudent person in the caller's situation would suspect an overdose, because such a test would align with Beaulieu's understanding of the statute's broad purpose—to save lives.[5]

---

[4] Most U.S. jurisdictions have Good Samaritan statutes of some kind. *See generally* U.S. Gov't Accountability Off., *Drug Misuse: Most States Have Good Samaritan Laws and Research Indicates They May Have Positive Effects* (2021) (providing an overview of the forty-eight jurisdictions with Good Samaritan statutes as of March 2021). We do not find Beaulieu's citations to the case law of other jurisdictions persuasive because of differences between the language of those statutes and the language of section 1111-B. *See infra* n.7.

[5] Though we ultimately need not turn to legislative history to decide this case, we nevertheless observe that the legislative record reveals a purpose of the statute more focused than simply saving lives. Floor debates of the corresponding bill in the House and Senate demonstrate that the statutory immunity was intended to incentivize individuals in "drug-using communities"—who are "on the scene" of a drug overdose—to call 9-1-1 without fear of prosecution. *See* 3 Legis. Rec. H-1473 (2d Reg. Sess. 2022); *see also* 4 Legis. Rec. S-1944 (2d Reg. Sess. 2022).

12

[¶19]  We disagree that the statute is ambiguous.  Here, the clause "in response to a call for assistance for a suspected drug-related overdose" is susceptible to only one reasonable interpretation: the caller must suspect that a drug-related overdose has occurred.  Several considerations support this view. For one, dictionaries associate "to suspect" with "impression," "idea," and "guess,"[6] which all refer to subjective thoughts and beliefs in contrast to the objective "reasonably prudent person" standard that Beaulieu favors.[7]  Further, pursuant to the Maine Legislative Drafting Manual and in alignment with conventional grammar, the modifier "for a suspected drug-related overdose" should be read to modify the term immediately preceding it—namely, "call for

---

[6] *Suspect*, New Oxford American Dictionary (3d ed. 2010) ("[to] have an idea or impression of the existence, presence, or truth of (something) without certain proof"); *Suspect*, The American Heritage Dictionary of the English Language (5th ed. 2016) ("[t]o consider (something) to be true or probable on little or no evidence"); *Suspect*, Webster's New World College Dictionary (5th ed. 2016) ("to think it probable or likely; guess; surmise; suppose").

[7] To support his view that the suspicion of a drug-related overdose should be assessed objectively, Beaulieu cites a Georgia decision that applies such a test.  *See State v. Mercier*, 826 S.E.2d 422, 424-25 (Ga. Ct. App. 2019).  We are not persuaded by this case, however, because Georgia's statute does not include the word "suspected."  Ga. Code Ann. § 16-13-5(b) (West, Westlaw through 2024 Reg. Sess.).  Beaulieu also cites cases from Kentucky and Pennsylvania, *Wilson v. Commonwealth*, 628 S.W.3d 132, 143 (Ky. 2021); *Commonwealth v. Lewis*, 180 A.3d 786, 790 (Pa. Super. Ct. 2018), to make a purpose-based argument for why section 1111-B should apply in this case.  Yet, when analyzing legislative intent, the purpose of an analogous statute from a different state does not override the intention of the Maine Legislature.  *See Waddell v. Briggs*, 381 A.2d 1132, 1135 (Me. 1978) (examining the statutes of other jurisdictions to discern the purpose of a Maine statute proscribing heart balm suits due to "the absence of legislative history or preambulary provision in the enactment of [Maine's statute]").  Nor should the statutory language used in Pennsylvania and Kentucky affect our interpretation of the plain meaning of Maine's Good Samaritan statute because, like Georgia, these states do not use the language "suspected drug-related overdose."  Ky. Rev. Stat. Ann. § 218A.133 (West, Westlaw through 2024 Reg. Sess.); Pa. Cons. Stat. § 780-113.7 (West, Westlaw through Act 151 of the 2024 Reg. Sess.).

assistance." Since it is the call that is for a suspected drug-related overdose, it is the content of the call that must reflect the caller's suspicion, although no specific wording is necessary for the call to qualify.[8] Because the plain language of the Good Samaritan statute is unambiguous, we need not rely on the statute's legislative history to resolve whether Beaulieu is immune from prosecution here.[9]

[¶20] Whether or not Beaulieu actually experienced an overdose,[10] the witness's request that the police check on Beaulieu's vehicle was based on her suspicion of a "medical event," a term that encompasses far too wide a range of circumstances to satisfy the threshold requirement for immunity that the call

---

[8] Requiring precise wording would produce absurd results, *see Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶¶ 19-23, 107 A.3d 621, by preventing some callers and protected individuals from receiving immunity based on a technicality and, in turn, by fostering a reluctance to call. These are also outcomes that the Legislature sought to avoid. 4 Legis. Rec. S-1944 (2d Reg. Sess. 2022) (stating that the law aims to counteract the problem that "[p]eople are afraid to call 9-1-1 when there is an overdose"); *An Act To Strengthen Maine's Good Samaritan Laws Concerning Drug-Related Medical Assistance: Hearing on L.D. 1862 Before the J. Standing Comm. on Crim. Just. & Pub. Safety*, 130th Legis. (2022) (testimony of Sen. Chloe Maxmin, sponsor of L.D. 1862) (emphasizing the importance of removing a caller's "doubt and confusion" as to whether the law will apply to the caller).

[9] At the motion hearing, Beaulieu also argued that the suspected drug-related overdose should have been evaluated from the perspective of the responding officer. Beaulieu has waived this argument by not raising it on appeal, *see Holland v. Sebunya*, 2000 ME 160, ¶ 9 n.6, 759 A.2d 205, and, in any event, a test focusing on the perspective of the officer would render the reference to "a call for assistance for a suspected drug-related overdose" superfluous and completely negate the obvious purpose of the statute—to enable persons at the scene of a suspected drug overdose that may involve a medical emergency to call for assistance without fear of prosecution. *See supra* n.5.

[10] At oral argument, Beaulieu conceded that the evidence in the record did not necessarily prove that he experienced a drug overdose.

be for a suspected drug overdose. No reasonable interpretation of "medical event" supports Beaulieu's argument that it necessarily refers to a drug overdose.

[¶21] A separate impediment to Beaulieu's immunity claim is that there is nothing in the record indicating that the officer was dispatched to "the location of a medical emergency." 17-A M.R.S. § 1111-B. The statute requires that the response to a call for assistance for a suspected drug-related overdose be to the location of a "medical emergency," *id.*, not to the location of a suspected mere "medical event." The trial court made no finding that there was a medical emergency at Beaulieu's location nor does the record give any indication that medical assistance was requested, required, or rendered. Because Beaulieu's claim of immunity fails to meet the statutory requisites, we affirm the denial of his motion to dismiss.

The entry is:

Order affirmed.

_____

Maxwell Coolidge, Esq. (orally), Franklin, for appellant Billy L. Beaulieu

Jacqueline A. Sartoris, District Attorney, William J. Barry, Asst. Dist. Atty., and Clio M. Barr, Stud. Atty. (orally), Cumberland County District Attorney's Office, Portland, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2022-3439
For Clerk Reference Only