MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2025 ME 29
Docket:      Cum-24-43
Argued:      October 9, 2024
Decided:     March 20, 2025

Panel:       STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

STATE OF MAINE

v.

CHRISTOPHER RAY

LAWRENCE, J.

[¶1]  Christopher Ray appeals from an adjudication entered by the District Court (Portland, *Goranites, A.R.J.*) finding that he committed the traffic infraction of failing to operate his bicycle "on the right portion of the way as far as practicable," *see* 29-A M.R.S. § 2063(2) (2024).  Ray presents several arguments on appeal, including that the court erred in its interpretation of 29-A M.R.S. § 2063(2).  For the reasons discussed below, we agree and vacate the adjudication.

## I.  BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the State, the following facts were established by a preponderance of the evidence.  *See* 29-A M.R.S. § 103(4) (2024); *State v. Chase*, 2017 ME 43, ¶ 1, 157 A.3d 1291.

2

[¶3] At 7:45 a.m. on July 7, 2023, an officer of the Cumberland Police Department was traveling east on Tuttle Road in an unmarked cruiser. He observed two individuals riding bicycles side-by-side ahead of him, also traveling east. Ray was riding to the left of the other cyclist and slightly to the left of the white fog line. Upon catching up to the cyclists, the officer slowed down and traveled behind them at approximately seventeen miles per hour for a short period of time. The officer then pulled his vehicle up beside the cyclists and said, "Single file, guys, single file." Ray then yelled, "You can go f**k yourself." The officer applied his brakes and activated the blue lights on his cruiser, and both cyclists pulled over to the side. The officer issued Ray a violation summons and complaint for failure to keep to the right of the road. *See* 29-A M.R.S. § 2063(2).

[¶4] Ray contested the violation summons and complaint, and the court held a bench trial on January 3, 2024, at which it heard testimony from Ray and the officer. The court adjudicated Ray to have committed the traffic infraction of failing to operate his bicycle to the right when operating at a speed less than the normal speed of traffic and imposed a fine of $151. Ray timely appealed to this Court. *See* M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶5] "The interpretation of a statute is a question of law, which we review de novo. We will construe a statute based on its plain meaning in the context of the statutory scheme, and only if the statute is ambiguous will we look to extrinsic indicia of legislative intent such as relevant legislative history." *Strout v. Cent. Me. Med. Ctr.*, 2014 ME 77, ¶ 10, 94 A.3d 786 (citation and quotation marks omitted). "In construing the plain meaning of the language, we seek to give effect to the legislative intent and construe the language to avoid absurd, illogical, or inconsistent results. All words in a statute are to be given meaning, and none are to be treated as surplusage if they can be reasonably construed." *State v. Santerre*, 2023 ME 63, ¶ 9, 301 A.3d 1244 (citation and quotation marks omitted).

[¶6] The statute at issue here, 29-A M.R.S. § 2063, establishes monetary fines for violations of the statute, deemed "traffic infractions." *Id.* § 2063(7). We have said that we apply the rule of strict construction to traffic infractions. *See State v. Chittim*, 2001 ME 125, ¶ 5, 775 A.2d 381. Although applicable, "the rule of strict construction . . . is subordinate to this other rule, that the judicial interpretation must be reasonable and sensible, with a view to effectuating the

legislative design and the true intent of the Legislature." *State v. Millett*, 392

A.2d 521, 525 (Me. 1978). We therefore turn to the plain meaning of the statute.

**A.    Plain Meaning of "Riding to the Right"**

[¶7]  Section 2063(2) provides:

**Riding to the right.**  A person operating a bicycle or roller skis upon a roadway at a speed less than the normal speed of traffic moving in the same direction at that time and place shall operate on the right portion of the way as far as practicable except when it is unsafe to do so as determined by the bicyclist or roller skier or:

**A.**  When overtaking and passing another roller skier, bicycle or other vehicle proceeding in the same direction;

**B.**  When preparing for or making a left turn at an intersection or into a private road or driveway;

**C.**  When proceeding straight in a place where right turns are permitted; and

**D.**  When necessary to avoid hazardous conditions, including, but not limited to, fixed or moving objects, vehicles, bicycles, roller skiers, pedestrians, animals, broken pavement, glass, sand, puddles, ice, surface hazards or opening doors from parallel-parked vehicles, or a lane of substandard width that makes it unsafe to continue along the right portion of the way.  For purposes of this paragraph, "lane of substandard width" means a lane that is too narrow for a bicycle or roller skier and a vehicle to travel safely side by side in the lane.

"Way" is defined as "the entire width between boundary lines of a road,

highway, parkway, street or bridge used for vehicular traffic, whether public or

private."  29-A M.R.S. § 101(92) (2024).  "Roadway" and "boundary lines,"

however, do not have statutory definitions.

[¶8]  We have applied section 2063(2) in a case and said that "we need look no further than the plain language of section 2063(2), because the statute is unambiguous."  *Semian v. Ledgemere Transp., Inc.*, 2014 ME 141, ¶ 26, 106 A.3d 405.  However, *Semian* did not concern *where* cyclists are permitted to ride when none of the exceptions are applicable.[1]  *See id.* ¶ 27.  Rather, *Semian* held that section 2063(2) is unambiguous as to *when* the command to ride "on the right portion of the way as far as practicable" applies to cyclists.[2]  *Id.* ¶¶ 25-27.

[¶9]  We conclude that the statutory text is ambiguous as to where cyclists must operate when the command to operate to the right applies.  The statute's use of "roadway" and "way" indicates that the Legislature must have intended different meanings for the words.  *See Santerre*, 2023 ME 63, ¶ 9, 301 A.3d 1244.  Further, there is no mention in the text of white fog lines and whether they are intended to delineate the "roadway" or the "way."  The undefined term "boundary lines" is equally ambiguous; it could refer to the fog

---

[1]  Additionally, section 2063(2) was subsequently amended.  The amendment clarified that the initial condition of applicability pertaining to safety is a determination made by the bicyclist or roller skier.  *See* P.L. 2013, ch. 241, § 4 (effective Oct. 9, 2013) (codified at 29-A M.R.S. § 2063(2) (2024)).

[2]  We held that "the only affirmative command arising from the provisions of section 2063 is triggered when (1) the initial conditions of applicability arise (that is, when the cyclist's speed is 'less than the normal speed of traffic moving in the same direction at that time and place . . . '); and, (2) when none of the exceptions described in subsections (A) through (D) applies.  In the instances where the statute controls, then the cyclist must travel to the right.  Otherwise, the plain language of the statute does not direct the cyclist to ride in any particular portion of the way."  *Semian v. Ledgemere Transp., Inc.*, 2014 ME 141, ¶ 27, 106 A.3d 405.

line, to the outer edge of the paved road surface, to the outer edge of the shoulder, or to the boundaries of the public right of way.  Finally, because the statute leaves it entirely up to a cyclist to determine how far to the right it is safe to ride, it becomes unenforceable against a cyclist who claims it would have been unsafe to have ridden any farther to the right.

## B.    Legislative Intent

[¶10]  Recent legislative history of section 2063(2) fails to shed light on the Legislature's intended meaning.    In 2013, Representative Jorgensen introduced L.D. 1460, "An Act To Update and *Clarify* the Laws Governing the Operation of Bicycles on Public Roadways," to the Maine State Legislature on behalf of the Bicycle Coalition of Maine.   L.D. 1460 (126th Legis. 2013) (emphasis added); *An Act To Update and Clarify the Laws Governing the Operation of Bicycles on Public Roadways: Hearing on L.D. 1460 Before the J. Standing Comm. on Transp.*, 126th Legis. (2013) (testimony of Rep. Erik Jorgenson).  The bill proposed to replace the use of "way" in subsection 2063(2) with "roadway," which was explicitly defined to not include the shoulder.  *See* L.D. 1460, §§ 2, 7 (126th Legis. 2013).   The Joint Standing Committee on Transportation heard testimony on the bill, which included the repeated contention that road users in Maine are uncertain as to where cyclists must

operate.  *An Act To Update and Clarify the Laws Governing the Operation of Bicycles on Public Roadways: Hearing on L.D. 1460 Before the J. Standing Comm. on Transp.*, 126th Legis. (2013) (testimony of, inter alia, Rep. Amy Volk; James C. Tassé; Paul Niehoff).  Despite this testimony, however, the bill was enacted without the described amendments, and importantly, without resolving the identified ambiguity as to where cyclists must operate when the command of section 2063(2) is applicable.  We urge the Legislature to consider clarifying this statute.

[¶11]  It is a well-recognized principle of strict statutory construction that an "offense cannot be created by inference or implication, nor can the effect of a . . . statute be extended beyond the plain meaning of the language used." *Davis v. State*, 306 A.2d 127, 129 (Me. 1973).  Here, a strict construction of section 2063(2), taken together with the ambiguity manifest in the plain meaning of the statute and its legislative history that does not resolve this ambiguity, leads us to the conclusion that this dispute must be resolved in favor of Ray.  *See Butler v. Ricker*, 6 Me. 268, 272 (1830); *Chittim*, 2001 ME 125, ¶¶ 6-7, 775 A.2d 381.  Accordingly, we vacate the adjudication and remand for entry of judgment in favor of Ray.[3]

---

[3] On appeal, Ray also contends that the court erred because there was not competent evidence to support the adjudication and raises three additional arguments that he did not raise in the trial

8

The entry is:

> Judgment vacated. Remanded to the District Court for entry of judgment in favor of Ray.

---

Lauri Boxer-Macomber, Esq. (orally), Kelly, Remmel & Zimmerman, Portland, for appellant Christopher Ray

Jacqueline Sartoris, District Attorney, Grant Whelan, Asst. Dist. Atty., and Ian Semon, Stud. Atty. (orally), Cumberland County District Attorney's Office, Portland, for appellee State of Maine

Violations Bureau docket number 4176631
FOR CLERK REFERENCE ONLY

---

court: (1) the stop was retaliatory and violated his First Amendment rights, (2) the stop was unlawful because the officer lacked authority, and (3) the adjudication was based on material omissions by the officer, including the unlawful withholding of the cruiser recording of the incident pursuant to the Maine Freedom of Access Act. Because of the determination that the adjudication in this matter must be vacated and judgment entered in favor of Ray, we do not reach these arguments.